# HENRY F. VALLETTE

*v.*

## JOHN I. BENNETT.

1. EJECTMENT. The plaintiff in ejectment, if he recovers at all, must do so on the strength of his own title, and this must be a legal, not a merely equitable, title.

2. MORTGAGE—*title of mortgagor.* Notwithstanding the legal title to mortgaged premises is in the mortgagee, the mortgagor is regarded as the equitable owner of the estate for all beneficial purposes, and his interest is liable to levy and sale on execution, and it seems the same rule applies to a deed of land in trust for the payment of debts.

3. TRUST DEED. Where property is conveyed to another by a deed absolute on its face in all respects, except for the trust declared, that the grantee shall pay and discharge certain indebtedness of the grantor, with a condition that if the grantee shall neglect or refuse to pay and satisfy the same, according to his covenant. then it shall and may be lawful for the grantor to take and repossess himself of the premises, the legal title passes to the grantee, and the grantor will not be reinvested with the same, on the failure of the grantee to discharge the trusts, without a re-conveyance.

4. SAME—*acquiescence in conveyance.* Where, by the terms of a trust deed, the trustee is empowered to use the avails of the property conveyed in payment of the grantor's debts, the trustee has the implied power to sell and convey the same so as to pass the legal title, and where the

trustee makes a deed absolute on its face to secure a creditor, which is in equity a mortgage, if the original grantor acquiesces in the same for a number of years, and until he is declared a bankrupt, it will be a ratification of the trustee's conveyance.

5. ESTOPPEL—*by deed confirming trustee's act.* Where a trustee, to pay debts, makes a conveyance of his grantor's land to a creditor, simply as a security, and, after the death of the original grantor, his heirs unite with the trustee in a quit-claim deed to release the equity of redemption to the grantee of the trustee, the heirs so uniting with the trustee, and all privies in estate, will be estopped from denying that the conveyance by the trustee was made in the due execution of the trust imposed.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action of ejectment, by Henry F. Vallette against John I. Bennett, for the recovery of the north half of the west 17 acres of the south half of the east half of the northeast quarter of section 14, township 38 north, range 14 east of the third principal meridian.

It appears, from the record, that in 1835, John K. Boyer entered the east half of the northeast quarter of section 14, township 38 north, range 14 east, including the land in dispute, and that he received a patent therefor on January 28, 1837.

That on January 27, 1838, John K. Boyer conveyed this 80-acre tract of land, with others, to Joseph Walker, for the expressed consideration of $3000, to hold the same in trust to pay and satisfy certain notes and demands of various persons against Boyer, specified in the deed, amounting to about $3189.76. Walker covenanted to pay said indebtedness, if it could be done with the property or avails thereof, and it was provided, in case of failure or refusal of Walker to perform such trust, Boyer to repossess and enjoy said lands.

The other material facts appear in the opinion of the court. The cause was tried by the court, who found the defendant not guilty, and rendered judgment in accordance with the finding, from which judgment the plaintiff appealed.

Mr. John Van Arman, and Messrs. Gary Bros., for the appellant.

Messrs. Bennett, Kretzinger & Johnson, and Messrs. Sleeper & Whiton, for the appellee.

Mr. Justice Scott delivered the opinion of the Court:

The decision in this case, we think, turns principally on the single point, viz.: the construction that shall be given to the deed of John K. Boyer to Joseph Walker, of the date of January 27, 1838.

The parties claim the land through a common source. The title which appellant insists is paramount, is derived through John K. Boyer. In 1835, Boyer entered the land and received the usual certificate, in pursuance of which a patent was issued to him in 1837. It appears, from the evidence, that in 1842 such proceedings were had in the United States District Court, that Boyer was declared a bankrupt, and William W. Saltenstall was appointed assignee. The 80-acre tract of land, of which the subdivision in controversy constitutes a part, was inventoried, with other lands of the bankrupt, as a part of the assets. In 1853, Saltenstall, the assignee, conveyed the land in dispute, with other lands of the bankrupt, to Laurin P. Hilliard, and Hilliard subsequently conveyed this particular tract to appellant. The consideration for this deed was nominal, and by it the assignee only purported to convey to Hilliard the interest the bankrupt had at the date of the proceedings in the United States District Court, in the land described in the deed from John K. Boyer to Joseph Walker. The assignee reported the making of the deed to Hilliard to the court, and it was approved.

Whatever title Walker may have acquired from Boyer to the land, he conveyed to the State Bank of Illinois, in September, 1838, seven months after the making of the former deed, and prior to the proceedings in bankruptcy. The appellee claims to have succeeded, through a regular chain of convey-

ances, to the title thus conveyed to the State Bank, and now asserts it as the better title. We have not deemed it material to consider whether appellee is, in fact, the owner of whatever estate there may have been in Walker or in the State Bank, for the very familiar reason, the appellant, if he recovers at all, must do so on the strength of his own title. For this reason, our inquiry will be confined to the single point, whether there is an outstanding legal title in any one as against appellant. This question, as was before suggested, depends upon the construction that shall be given to the deed from Boyer to Walker, made long prior to the proceedings in bankruptcy.

The deed of the 27th of January, 1838, was made to enable the grantee to pay certain indebtedness of the grantor, and it was expressly provided in the deed itself, if the grantee shall neglect or refuse to perform the trust, then it shall be lawful for the grantor " to take, repossess and enjoy his former estate." The position assumed is, that a party conveying property in trust to secure the payment of debts is still the "real owner of the estate," and if the indebtedness is afterwards paid, the legal title, as well as the equitable title, is in the grantor, and he is entitled to the possession of the property. This view of the law can not be maintained. The doctrine of the English law was, the mortgagee was the owner of the whole legal estate in the mortgaged premises. The only modification to this doctrine in this country is, the mortgagor, notwithstanding the legal title is in the mortgagee, is regarded as the equitable owner of the estate for all beneficial purposes. Hence, it is held the equity of redemption remaining in the mortgagor may be sold and conveyed, and is liable to levy and sale on execution. *Finch* v. *Pinkard*, 4 Scam. 469.

Counsel urge another view, that, by the terms of the trust deed, if Walker neglected or refused to pay *all* of the indebtedness mentioned, then Boyer might repossess himself of the premises conveyed, and that if, by any neglect or refusal to

execute the trust, Boyer would have had the right to bring ejectment for the purpose of regaining possession, his heirs and assigns would have the same right.

We will be.assisted to a clearer understanding of this transaction by a reference to the *habendum* and trust clauses of the deed. The *habendum* is in the usual form, and, but for the trust declared, the words used are such as would pass an absolute estate to the grantee, his heirs and assigns forever.

The trust declared is, the grantee shall pay and discharge the several notes and demands for the payment of which the grantor was liable, "provided the same can be done and effected with the property hereby sold and assigned and conveyed, or the avails thereof." The conveyance was upon the further expressed condition: If the grantee "shall neglect or refuse to pay and satisfy according to his aforesaid covenant, that then and in said case it shall and may be lawful for the party of the first part, all and singular, the premises hereby granted, * * * to take, repossess and enjoy as of his former estate." The words of the *habendum* are sufficiently broad and comprehensive to leave no doubt on the mind the legal title to the premises did pass to the grantee, and that it was so intended by the parties.

It is contended that for any failure on the part of the grantee to perform the trusts created by the deed, according to his covenant, the legal title to the lands would, in some way, be as though it had never been out of the grantor, and this without any reconveyance from the grantee. The deed will bear no such construction. No doubt it was the intention of the parties, if the grantee neglected or refused to perform the trusts imposed, the property should be reconveyed, and, in case of failure, this clause in the deed would enable the grantor to compel a reconveyance by a bill in chancery. This is all it does mean. The legal title was, by the express terms used, vested in the grantee, his heirs and assigns, and nothing short of a reconveyance could place the legal estate back in the grantor.

But if the construction insisted upon could be maintained, it would be unavailing, on account of the conveyance to the State Bank, in pursuance of the trust.  This grant was acquiesced in by the grantor.  It was made in September, 1838, long prior to the proceedings had in bankruptcy, and nearly five years before the death of the grantor, yet there is no suggestion he ever claimed it was made in violation of the terms of the trust.  The deed to the bank, though absolute in form, was subject to a defeasance, and was nothing more than a mortgage to secure the indebtedness of Boyer to the bank.   The equity of redemption, however, remained in Walker, and not in Boyer.

The heirs of Boyer, after his death, treated the conveyance to the State Bank as having been made in pursuance of the powers conferred upon the trustee by the deed.  In 1843, after the death of their ancestor, the heirs joined with Walker in a quit-claim deed to release the equity of redemption to the State Bank, in which it was declared it was made, so that the title "may forever inure to the only proper use and behoof" of the parties to whom the land had been granted by the deed of September, 1838.

Laurin P. Hilliard, who is the grantor of appellant, and the husband of one of the heirs of John K. Boyer, joined in the execution of this latter deed.  It contained no covenants of warranty, and perhaps nothing that would estop Hilliard or his grantees from setting up any after acquired title to the lands.   But we think Hilliard and all privies in estate are estopped, by the terms in the deed, from denying that the conveyance to the bank was made by Walker, in the due execution of the trust imposed.  The deliberate admission in the deed of release was itself a muniment of the bank's title, and as an estoppel it traveled with the title in whosesoever hands it might afterwards come.   *Carver* v. *Jackson*, 4 Peters, 80.

It is said, the heirs had no interest whatever to release; that whatever interest John K. Boyer may have had, vested, under the bankrupt act, absolutely in the assignee.  That

may be, but it was supposed they had, and in that belief the deed was executed. There was an apparent interest in the heirs, and they could, with great propriety, join with Walker, in whom was really the equity of redemption, in releasing it, so that the title might "inure to the use and behoof" of the bank and its grantees. It was just as effectual to assure the bank of its title, and it may, with as much propriety, be invoked as an estoppel, as if they had had a real interest, instead of an apparent interest, to convey.

Having given the most solemn assurances, by deed under seal, it seems inequitable to permit Hilliard, and all privies in estate claiming by subsequent deed, to retract, and say, the conveyance to the bank, upon the faith of which it has acted, was made in fraud of the trust, and, therefore, inoperative as to parties having notice, as it is insisted the bank had.

There is another view that can, with great justness, be taken of the case. The trustee was empowered to use the "avails" of the property to pay the debts of the grantor. How could this be done, unless the words implied the power to sell and convey the trust estate? When it is established the deed to the State Bank was made by the trustee in pursuance of the authority conferred upon him, it is conclusive of the whole case. The legal title had then passed from Boyer, no matter what construction may be given to the original deed from him to Walker. It seems altogether probable the deed to the bank was made with the knowledge and consent of Boyer. It is certain he acquiesced in it, as was before remarked, up to the time of his death, which did not occur until March, 1843.

The conclusion is irresistible, that no interest in these lands passed to the assignee in bankruptcy, unless it was the equitable estate of the bankrupt—his equity of redemption. This is the most favorable light in which the transaction can be placed, and yet in this view the assignee's deed conveyed only an equitable estate to appellant's grantor, and that can

not prevail over the outstanding legal title to the estate that was in the State Bank.

No error appearing in the record, the judgment is affirmed.

*Judgment affirmed.*