JOHN LILL ET AL. Executors,

v.

N. B. BRANT, Administrator.

1. CONVEYANCE TO PAY DEBTS—STATUTE OF LIMITATIONS.—The testimony showed that Horan, appellee's intestate, conveyed to Lill certain personal property to pay a claim of certain persons against Horan. *Held*, that the cause of action as shown was the breach of an express contract, and it appearing that the claim was fully paid by Lill in 1865, the cause of action against him for any surplus after such payment arose then, and this action is barred by the Statute of Limitations.

2. PROOF—VARIANCE.—It being expressly stated to be a conveyance of property for certain declared trusts, in consideration of certain indebtedness of the grantor to the grantee, such consideration becomes material to be shown, and a variance in this respect between the declaration and proof is fatal.

3. COUNTY COURT JURISDICTION—ON APPEAL.—The claim declared upon was a conveyance of property to be held, used and disposed of for the benefit of the creditors of the grantor. The grantee then, according to the declaration, became a trustee, and the property and its proceeds a trust fund,

Lill et al. v. Brant.

which the *cestui que trust* alone could pursue, and only in a court of equity. The claim as declared upon, was not within the jurisdiction of the county court, and the Circuit Court on appeal can only take the same jurisdiction as the court below.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

Messrs. MONTGOMERY & WATERMAN, and Mr. SANFORD B. PERRY, for appellants; cited upon the question of variance: Brock v. Slaten, 82 Ill. 282.

The jurisdiction of county and circuit courts: Propst v. Meadows, 13 Ill. 168; Von Kettler v. Johnson, 57 Ill. 119; Moffit v. Moffit, 69 Ill. 641; Barnett v. Wolf, 70 Ill. 76; People v. Gray, 72 Ill. 343; Bostwick v. Skinner, 80 Ill. 147; Pahlman v. Graves, 26 Ill. 405; Rev. St. 339, § 69; Const. 1870, Art. VI. §§ 12, 18.

The character of the transaction was that of a special contract: Doyle v. Murphy, 22 Ill. 502; Steele v. Clark, 77 Ill. 471; Albrecht v. Wolf, 58 Ill. 186.

That the action was barred by the Statute of Limitations: Angell on Limitations, Ch. 16, § 166; Governor v. Woodworth, 63 Ill. 254; Hayward v. Gunn, 82 Ill. 385.

Upon the creation of a trust: Gross St. Ch. 44, § 5; Perry on Trusts, §§ 77–84; Hovey v. Holcomb, 11 Ill. 660; Perry v. McHenry, 13 Ill. 227; Seaman v. Cook, 14 Ill. 501; Lantry v. Lantry, 51 Ill. 458; Rogers v. Simmons, 55 Ill. 76; Walter v. Klock, 55 Ill. 362; People v. Lott, 36 Ill. 447.

Messrs. BRANDT & HOFFMAN, for appellee; contending that a conveyance of real estate, though absolute in terms, if intended by the parties to be security for a debt, is in law and equity a mortgage only, cited Delahay v. McConnell, 4 Scam. 157; Miller v. Thomas, 14 Ill. 428; Tillson v. Moulton, 23 Ill. 648; Klock v. Walter, 70 Ill. 416; Strong v. Shea, 83 Ill. 575.

Upon the question of jurisdiction of the county court to adjudicate upon the claim in suit: Moore v. Rogers, 19 Ill. 347; Dixon v. Buell, 21 Ill. 203.

PLEASANTS, J.   On the 14th of May, 1876, appellee filed in the County Court a claim against the estate of William Lill, setting forth in substance that about June 1, 1865, Horan was the owner of a liquor and billiard saloon, with the stock, fixtures and furniture thereof, in the city of Chicago, of the value of $12,000, and of two lots described, and was indebted to Lill for goods sold and delivered in the sum of $3,500, and to others not named, in the aggregate sum of $15,000; that he then conveyed to said Lill all of said property, " upon the understanding and agreement between said Horan and said Lill that from the proceeds of said property said Lill should pay the debt due as aforesaid from said Horan to said Lill, and the balance of the proceeds of said property said Lill agreed with said Horan to pay to other creditors of said Horan or to said Horan himself;" that Lill thereupon converted to his own use the said personal property, and held the said lots until April, 1875, when he sold them for $9,450, and that he never accounted for any of the proceeds of said property, either to said Horan or to any of his creditors; by reason whereof, said Lill in his lifetime became, and his estate now is, indebted to the estate of said Horan for the use of his creditors and heirs, for the value of the personal property so converted less the debt so due to himself, with interest on the balance from June 1, 1865, and for the proceeds of the lots so sold, with interest thereon from April, 1875, less the taxes and improvements and the expenses of the sale and commissions, credited at $3,000, leaving a balance alleged to be due of $21,176.62.

The claim was disallowed by the County Court, but upon a trial in the Circuit Court on appeal, a verdict was returned in favor of the plaintiff for $9,000, on which, after motions for a new trial and in arrest overruled, judgment was entered.   Defendants appealed to this Court, and now assign for error the overruling of their several motions to dismiss the claim, to set aside the verdict and grant a new trial, and to arrest the judgment, and the entering of judgment for the plaintiff upon the verdict.

The testimony shows that said Horan and one Charles Dennehey carried on the saloon as co-partners for a year prior to

January, 1864, when they dissolved—Horan retaining the assets, assuming the liabilities and continuing the business. They owed Paris & Allen, of New York, about $5,000, and others, including their lessor for rent, and Horan, with Lill as security, executed a bond to Dennehey to indemnify him against these claims.   He afterwards became indebted to Brant & Co., of Chicago, and to John Black, of Milwaukee, for liquors, in about the sum of $2,500, and in February, 1865, transferred his interest in the saloon stock and property to said Lill.

The terms on which this transfer was made are not clearly shown.   Dennehey was present, but although called by appellants as a witness on the trial he was not asked by either side in reference to them.   He speaks of an inventory as having been then made, but this, with the other papers relating to the transaction, if there were any, was destroyed in the great fire, and all the proof we have on this point consists of admissions or statements said to have been made by Lill shortly thereafter. Three witnesses then in the interest of Brant & Co. or of Black, testify to conversations had by them severally with him, in which he said that he had taken all of Horan's property to protect himself as his security for a debt of some $3,500, but that they had no occasion to be uneasy about the claims they represented, since there was means enough in his hands to pay all the creditors so far as he knew; that he would dispose of the property in such time and manner as would be most advantageous to all concerned, and that all would be paid—himself first, and then the others.

Nor is the value of the property satisfactorily shown, the extreme estimates being three thousand and twenty thousand dollars.

Horan remained in charge of the business after the transfer, and under the direction of Lill continued to sell the stock in the usual course along until the summer or perhaps September, following, when the remnant was closed out at public auction, for about the sum of $400.

In May of that year the claim of Paris & Allen was put into a judgment for $4,982.40; on the 14th of July Horan exe-

cuted to Lill a warrantee deed, in the common form, of the two lots before mentioned for the expressed consideration of $500; and on the 6th of September Lill satisfied the judgment by the payment of $5,145.00.

Horan died in 1868. Dennehey was one of the executors of his will, and although he thought himself familiar with his affairs, talked with him about them shortly before his death and in view of his own appointment as executor, and had been a witness of the transfer, he never knew or heard of any claim by him against Lill on account of this transaction, and settled the estate without reference to it.

In April, 1875, Lill sold the two lots, which had then been improved by the erection thereon of a fence and a cottage, and otherwise, for $5,500, less the commissions—one-fourth in cash and the residue in equal yearly installments. In the following fall he also died, and in the spring of 1876 appellee's letters of administration were taken out and this claim filed.

Upon the record, which is above sufficiently shown to present the questions of law involved, our conclusions are, first, that this claim, as stated by the appellee, was not within the jurisdiction of the County Court, nor consequently of the Circuit Court, which on appeal could be no broader; second, if it was, it was not proved as alleged; and third, whether as alleged or as proved, if any claim was proved, it was barred by the Statute of Limitations.

What was the character of the transaction between Horan and Lill, as set forth in the claim filed, and what the relation thereby created between them? Was it a mortgage, a sale, or a proper trust?

Appellee contends that it was a mere mortgagee to secure the indebtedness of Horan to Lill, with the resulting legal liability on the part of Lill to account for the excess of the proceeds of the mortgaged property, if any, to Horan or to such of his creditors as should take the steps necessary to reach it. Certainly there was a provison, so far as it might go, for the payment of that indebtedness, but we do not discover in it the features of a mere mortgage. There is no day given for payment, no defeasance, no equity of redemption in the real estate.

Nor was the provision limited to the payment of Lills' debt, with the right in Horan to the excess unless it should be intercepted by creditors through legal means, as would have been implied if there had been no express reference to creditors.    If the duty was not absolutely imposed, the power was given to pay them, by the terms of the agreement alleged.    The language employed, "to pay to other creditors of said Horan *or* to said Horan himself," is not as clear, perhaps, as might have been used, but taken in connection with the statements following— that there were other creditors, and that by reason of the premises Lill became indebted to Horan's estate for the use of his creditors as well as of his heirs—sufficiently manifests the understanding of the parties, that out of the excess Horan should pay these creditors directly.    We would hardly expect such repeated use of the expression if no more was meant than the law would clearly imply without any.    And the construction we are disposed to give it is further aided by all the considerations of propriety and justice applicable to the circumstances.

So then, by reason of what it contained as well as of what it omitted, it was something else than a mere mortgage or security for the debt of Lill.    Nor was it a sale in any proper sense. Lill neither paid nor promised to pay any price in any form or manner, nor did the property by virtue of the conveyance become his.    On the contrary he became bound to hold and use until he should dispose of it, and sooner or later to dispose of it, not for the benefit of himself alone, but of others as well.

And this, it seems, is just what distinguishes a trust from a sale.    If property be conveyed to one to be held, used and disposed of at his own will, or for his own benefit, it is a sale, notwithstanding his agreement to pay the price to others than the grantor by direction of the latter.    In that case he becomes a mere debtor, and his promise a simple assumpsit for the breach of which the grantor, or those for whose benefit it was made may sue at law and recover their respective damages. But if it be conveyed to be held, used and disposed of for the benefit of others, he is a trustee, and the property and its proceeds a trust fund which the *cestuis que trust* alone can pursue, and in a court of equity.    Doyle v. Murphy, 22 Ill. 502;

Steele v. Clark, 77 Ill. 471; Vallette v. Bennett, 69 Ill. 632.

The conveyance in question, as set forth in the statement of appellees' claim, being, in our opinion, of the latter kind, the claim itself was not within the jurisdiction of the Probate Court, which could not take the necessary account, nor marshal assets, nor discriminate between creditors whose claims are of the same class.

But if it had been it was not proved as stated. Manifestly the cause of action exhibited was the breach of an express contract. That contract, therefore, was material to be stated, and it included the consideration of it. It was expressly although not formally stated to be a conveyance of certain property upon certain declared trusts, on the one side, in consideration of certain indebtedness of the grantor to the grantee, to be thereby provided for, and the promise of the latter to execute those trusts, on the other. Whether the consideration of that indebtedness was material or not, the fact of such indebtedness as the consideration, in whole or in part, of the conveyance, was. Now the proof is, that such was not the consideration, nor any part of it. Horan was not indebted to Lill for goods sold and delivered, or otherwise. His debt was owing to Paris & Allen, and Lill was not even security for it. He was security on a bond of indemnity against it to Dennehey. And so the trust was not to pay any debt due to Lill, but to pay a debt due to Paris & Allen. Variances of this character between the proof and the declaration in an ordinary action at law, would be fatal; and the same rule is applied to a claim filed in the County Court. Brock v. Slaten, 82 Ill. 282.

But still further, the proof shows that Lill disposed of all the personal property and fully paid the debt due to Paris & Allen by the 6th day of September, 1865, and this was fully known to Horan at the time. Was it not the legal duty of the trustee immediately thereupon and without demand to pay over any excess in his hands to Horan or to his creditors, according to their respective rights? We fail to see why this cause of action, if any there is, whether legal or equitable, did not then accrue, and is not therefore barred by the statute of limitations. Hayward v. Gunn, 82 Ill. 385.

We disregard the fact that Lill did not dispose of the two lots until April, 1875, relied on to take the case out of the statute, as immaterial in this connection. The conveyance of the lots was absolute in form, and not being in fact a mortgage or mere security for debt to the grantee, as we have attempted to show, parol evidence could not be received to affect its legal import. And the record shows that it was made long after the transfer of the personal property. The witness Prentiss states that Lill told him he had two lots of Horan's; but if he meant that he so told him in February, 1865, when they first talked of the transfer of the personal property, his memory as to the time is probably at fault. He had repeated interviews with Lill in relation to this matter during the spring and summer, and may easily, after the lapse of so many years, have confused the times when the several statements were made. The record is absolutely reliable as to dates, and it also appears that Lill told another witness that the lots would not nearly make him whole; as if they had been conveyed after he knew what the personalty realized.

We are therefore of opinion that the errors complained of are well assigned, and the judgment of the Circuit Court is accordingly reversed.and the cause remanded.

Reversed and remanded.