## FLYNN *v.* EDWARDS.

*(Circuit Court, W. D. Missouri, W. D.   December 10, 1888.)*

1. JUDGMENT—RENDITION AND ENTRY—AMOUNT—COSTS.
    Under the Missouri practice of not expressing the amount of costs in a judgment, and Rev. St. Mo. § 1019, requiring the clerk to make an itemized statement of the debt and costs on the back of the execution, a judgment for a certain sum, and costs of the action, declaring a lien on the land therefor, and directing that the land be sold in satisfaction thereof, is a sufficient judgment in fact awarding costs.

2. SAME—COSTS—TAXATION.
    In ejectment by the former owner of land sold for taxes, the fact that the transcript of the record of the tax suit shows only an *alias* writ of summons is not sufficient evidence that no original writ was issued to show that the fees for issuing and serving the original writ were improperly charged.

3. SAME—WAIVER OF OBJECTION.
    Plaintiff, having made a payment on the judgment and costs insufficient to cover such fees, and having been notified of the deficiency by the collector,

and neglected to exercise his right to move for a retaxation of the costs, given by Rev St. Mo. § 1011, cannot be heard to say that the unpaid balance was inconsiderable, and that the land should not have been sold.

4. TAXATION—COLLECTION BY SUIT—SALE—COLLATERAL ATTACK.
    Where land is sold under a judgment for taxes, by virtue of Rev. St. Mo. § 6836, providing for the enforcement of the payment of taxes by suit, the neglect of the sheriff to sell only such subdivision as might have been necessary to satisfy the judgment, is not available in a collateral action of ejectment by the former owner against the purchaser

5. SAME—ESTOPPEL—IN PAIS.
    Plaintiff, having obtained satisfaction of the judgment by a sale of the land, and received and held the balance of the proceeds for a period of five years, cannot question the validity of the sale as against subsequent purchasers in good faith, who have made valuable improvements thereon, though he pays the sum so received into court; such payment being unavailing in a mere possessory action at law, and any equitable rights he might have had having been lost by his laches.

At Law.

Ejectment by William Flynn against J. P. Edwards to recover possession of certain land formerly owned by plaintiff, which had been sold for taxes.

*George H. English,* for plaintiff.

*A. Comingo,* for defendant.

PHILIPS, J. This is an action of ejectment for the recovery of the possession of 40 acres of land situated in the county of Bates, ouster laid in 1883. The plaintiff is recognized as a common source of title. The defendant claims title by mesne conveyances, under a tax deed. The evidence in the case shows that this land was returned as delinquent for taxes unpaid by the plaintiff thereon. Pursuant to the statute (section 6836) suit was instituted in 1879 against the plaintiff in the circuit court of Bates county, Mo., in the name of the state, at the relation of the county collector, to enforce, by judgment, the collection of said tax against said land. There was a personal service upon the defendant, and a judgment was duly rendered against him therein on the 5th day of August, 1880, enforcing the lien of the state for the taxes and costs, and directing a special *fi. fa.* for the enforcement thereof. Special execution issued thereon on the 11th day of September, 1880, under which the land, after due advertisement, was sold on the 11th day of November, 1880, and Benjamin B. Canterbury and W. A. Scott became the purchasers thereof at the sum of $76, which sum was then paid to the sheriff; and the sheriff, in due time, made his report of sale thereof, and on the day following executed, acknowledged, and delivered a deed therefor to the said purchasers. Afterwards, on the 29th day of March, 1881, the said Canterbury and Scott, by deed of warranty, duly conveyed the said land to the defendant herein in consideration of the sum of $200. At the time of the sale the land was unimproved and unoccupied, and was of very indifferent quality. The defendant took possession after his purchase, and has ever since remained in possession. He has inclosed the same with a fence, and put valuable improvements thereon, using the ground principally for feeding and herding cattle. The plaintiff assails

the validity of defendant's title on various grounds, which will be considered in their order.

1. It is claimed, first, that, after the rendition of said judgment, and before the sale under the execution, the plaintiff paid to the collector the whole amount of debt and costs then due. It may, for the purposes of this opinion, be conceded to plaintiff that if, as a matter of fact, he did so pay to the collector the amount of said judgment and costs, that any subsequent sale of the land under said judgment was unauthorized, and no title would pass thereunder. The principal and interest found due by the judgment on the 5th day of August, 1880, amounted to $34.70. This debt by provision of the statute, and the direction of the judgment, bore 10 per cent. interest. On the day of the issuance of the execution the interest amounted to 34 cents, making principal and interest then due $35.04. The judgment shows that, after the rendition of the judgment, the plaintiff did send to the collector the sum of $47.12. There is some controversy as to the date of the receipt of this money Looking at the whole evidence, written and parol, the best conclusion at which I can arrive is that this money was received by the collector on or about the 29th of September, 1880, which would make the amount of principal and interest then due $35.20. On the date last above named the collector wrote a postal card to the plaintiff, in which he stated that the $47 and some cents had just been handed to him in a draft, and notifying him that it lacked $7.74 of paying the judgment, and that if he would send the money within five or six days, that would satisfy the claim; otherwise the land would be advertised for sale, incurring additional costs. On the back of the execution the clerk indorsed an itemized statement of the debt and costs, as by statute in such case made and provided, (section 1019, Rev. St.) The aggregate amount of such costs were $18.49, which, added to the debt, and interest, would make an aggregate of $55.53; so that, if the amount of costs were correct, the sum paid by plaintiff to the collector was short about $6.40. Plaintiff's counsel first contends that there was no judgment in fact awarding costs. Without conceding that such award was essential to be expressly made in the judgment, it is sufficient to say that the judgment, in express terms, after ascertaining the amount of the debt, and declaring the lien on the land, says:

"The court further adjudges that the sum of thirty-four dollars and seventy cents, together with interest, fees, and commissions, and costs of this action, constitute and are a lien against said parcel of land."

The judgment then further directs that the land be sold under special *fi. fa.*, "in satisfaction of said sum of money, together with all costs, interest, fees, and commissions adjudged herein to be due thereon." As a matter of practice, under the Missouri statutes, the amount of the costs are never stated in the judgment. "The judgment is, for the debt so much, and damages so much, and costs, without specifying what exact sum; and on the execution the costs are indorsed, and this has ever been considered in this state sufficient authority to make the costs." *Mc-Knight* v. *Spain*, 13 Mo. 538. The clerk, as a matter of fact and prac-

tice, taxes up the costs after judgment, and enters them in a fee-book kept therefor, and when he issues execution he simply enters an itemized amount of these fees upon the back thereof. "Such a judgment for costs, being a final disposition of the case, is like any other final money judgment of the circuit court, and constitutes a lien for the costs  *  *  * in favor of the party prevailing." *Beedle* v. *Mead*, 81 Mo. 304. The costs "are fixed by law, and the sum is a mere matter of calculation," to be made, of course, by the clerk. *Bobb* v. *Graham*, 15 Mo. App. 296.

The next contention of plaintiff is that among the items of costs so stated by the clerk are the following, which he claims are improperly charged, to-wit:

"Alias writ & copy, $1.50; copy of petition, seal, &c., $1.25; fee-bill and execution, $1.00; original writ, copy of petition, copy of writ, $2.00; also a return of the sheriff of Cass county, 50 cents,—aggregating $6.25."

It is claimed by plaintiff's counsel there was never an original writ of summons, copy of petition, etc., and but one *alias* writ, so called, issued by the clerk, and that was the one served on the plaintiff in Jackson county, Mo. For proof of this he relies upon a certified transcript of the record and proceedings had in the tax suit, from the circuit clerk's office of Bates county, which transcript only gives a copy of what purports to be an *alias* writ of summons sent to Jackson county, on which service was had. It is not satisfactory to my mind that the general certificate, in the usual perfunctory style, attached by the clerk to the transcript, is sufficient evidence to justify the court, in this collateral proceeding, in holding that there was but one writ of summons issued in the case. The transcript of the record shows that the petition in the tax suit was filed on the 10th day of September, 1879, and it would be fair to presume that the writ of summons went instantly, and this presumption is confirmed by the subsequent entry of record made by the court at the March term, 1880, to which term an original writ of summons would have been returnable. This record recites: "Now, at this day, it is ordered that an *alias* writ issue to Jackson county, Mo." The presumption, therefore, must be indulged, in favor of this action of the court, that an original writ had been issued and returned *non est;* and, if so, the charge of $2.00 was properly made by the clerk; and this would most probably account for the item of 50 cents charged in favor of the sheriff of Cass county, which would be the sheriff's fee for a return of *non est.* This would leave only to be accounted for the two items of $1.50 and $1.25 for one *alias* writ, copy of petition, etc., amounting to $2.75, and the item of $1.00 for fee-bill and execution. I am unable to account for said second *alias* writ; but the item of fee-bill and execution is evidently nothing more than the special *fi. fa.* issued by the clerk, as that is nowhere else charged for, and the prefix of the "fee-bill" to the word "execution" would not, I presume, be seriously claimed to invalidate that charge; so that, giving the plaintiff every reasonable advantage of his criticism on this bill of costs, there is a charge of only $2.75 not accounted for; from all of which the fact remains that the sum sent by the plaintiff to the collector fell short $3.65 of satisfying the judgment and

costs. And, after having been expressly notified by the collector that the sum sent by him was insufficient, his failure to give further attention to the matter was at his own peril; and the collector, acting in his official capacity as the representative of the state and the instrument of the law for the collection of the debt and costs, not only had the right, but it was his duty, in obedience to the command of the writ, to proceed to advertise and sell to make the residue thereof. The plaintiff cannot now be heard to say, in justification of his own negligence and dereliction, that the money he sent to the collector was sufficient to satisfy the judgment for the principal debt, and that the officer was not justified in proceeding further to collect so inconsiderable a balance for costs. As a matter of practice the costs are first to be paid out of any sums collected by the officer. Ror. Jud. Sales, § 1448; *Shelly's Appeal*, 38 Pa. St. 210 *McNeil* v. *Bean*, 32 Vt. 429; *Fry's Appeal*, 76 Pa. St. 82; Herm. Ex'ns. § 278. Under this view the sum so paid by plaintiff to the collector left the principal debt unsatisfied, after deducting the $15.74 of costs here inbefore demonstrated to have been properly charged. Under such a state of facts, as disclosed by this record, after the plaintiff was notified that the sum sent by him did not satisfy the judgment, and that the land would be advertised and sold for the residue, it was plainly his duty to look after the matter of costs, and if there were any errors claimed by him to have been committed by the clerk in his auditing of the fees he should have availed himself of the provision of section 1011, Rev. St. Mo., which authorizes any person aggrieved by the taxation of a bill of costs to make application to the court from which the execution issued to retax the costs. "In such retaxation all errors shall be corrected by the court." See Freem. Ex'ns, § 381.

2. It is next insisted by plaintiff's counsel that it was the duty of the sheriff, in conducting the sale under the execution, to have sold the land in the least possible quantity that would have satisfied the judgment, and not to sell the whole 40-acre tract without first having offered a less subdivision, and that his report of the sale should show this fact to justify his action in selling the whole. It is unnecessary to discuss the provisions of the statute in this respect, or to review the authorities cited by counsel from other jurisdictions touching this question, as it has been expressly held by the supreme court of this state, in *Wellshear* v. *Kelley*, 69 Mo. 344, that "the neglect of the sheriff to sell the land by its smallest legal subdivision did not invalidate the sale in a collateral proceeding." This decision was predicated of a tax sale under the very statute in controversy. This, being the construction placed on this statute by the highest judicial authority of the state, should be followed in this jurisdiction. This rule applies peculiarly as to third purchasers under the vendee at the execution sale. Freem. Ex'ns, § 296; *Mixer* v. *Sibley*, 53 Ill. 61.

3. There is still another objection to plaintiff's right to maintain this action. The evidence shows that within the year after the sheriff's sale the plaintiff engaged the services of W. T. Johnson, Esq., a competent attorney at law of Kansas City, to proceed to Bates county and make in-

vestigation of the regularity of the judicial proceedings leading to the judgment and sale thereunder of the land in question; and, if satisfied of the validity of the sale, to draw the balance of the money in the hands of the sheriff arising from the sale, after satisfaction of the judgment and costs. Johnson accordingly went to the county seat of Bates county, made the examination, and, being satisfied thereby that plaintiff had lost his land, drew from the sheriff the said balance in his hands, amounting to $41.10, and, after returning to Kansas City, explained to plaintiff the situation, and gave him his opinion, informing him after the satisfaction of the judgment and costs in the tax suit there remained in the hands of the sheriff the sum of $51.90; that the sheriff held in his hands another execution against the plaintiff in favor of one George Hale for the sum of $10.80, to which he had applied that sum in satisfaction; and that he had drawn from the sheriff the remaining sum of $41.10. This sum Johnson, on the 28th day of September, 1881, paid over to plaintiff, taking his receipt therefor, which is here in evidence. This sum the plaintiff retained in his possession, as his money, at the time of the institution of this suit, on the 5th day of November, 1885, and until the 17th day of October, 1887, when, at the instance of Judge Krekel, before whom the cause was then on trial, he paid it into court as the condition of any judgment herein in his favor. I am unable to perceive how such act of paying this money into court can avail the plaintiff in the action of ejectment. It is a naked possessory action at law, and as such the right of the plaintiff to maintain his action must be determined by the facts and the law as they stood at the time of the institution of suit. No equitable principle is involved. The plaintiff could not strengthen his cause by any subsequent act. If he was estopped or barred of his right of action at the time of the institution of suit at law, it so remains to the end of the litigation. And even if the character of the action were such as to permit of such after restitution, the plaintiff has not done complete equity. He has reaped the benefit of the sale in having a judgment and execution against him satisfied out of the proceeds in favor of said Hale. He yet enjoys the fruit thereof, and has offered no restitution. He also held and enjoyed the residue, $41.10, for over six years, and then paid into court the principal sum, without interest. This is not equity, if the case is to be decided on equitable principles. It may not be technically correct to call it an estoppel, but, be it estoppel, election, or ratification, I undertake to say, both on reason and authority, that where a party, with full knowledge, such as the plaintiff unquestionably had, of the fact that his land had been taken under execution in a judicial proceeding, and sold by the sheriff, and after he has made examination into the facts and particulars thereof, with all the facts open and accessible to him then as now, takes from the sheriff the balance of the proceeds of sale, appropriates and enjoys it, as did the plaintiff in this case, he has made his election to abide by the result. He has completely ratified the proceeding, and it does not, after the lapse of five years, lie in his mouth to question its validity, especially as against a third party, who has since, in good faith, made last-

ing and valuable improvements thereon. The authorities are all one way on the question. *Vallette* v. *Bennett*, 69 Ill. 632; *State* v. *West*, 68 Mo. 229; *Kelly* v. *Hurt*, 74 Mo. 562; Big. Estop. 574–579; *Pendleton Co.* v. *Amy*, 13 Wall. 305, 306. So Freeman on Executions (§ 307,) says:

"When defendant, having knowledge of a sale, permits it to stand unquestioned for a long period, his inaction affords a very strong presumption that he acquiesced in the sale. This acquiescence cannot be withdrawn after several years, and when the property has probably passed into the hands of a stranger to the original sale."

The rule is thus stated in 2 Pom. Eq. Jur. § 965:

"When a party, with full knowledge of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time, and knowingly permits the other party to deal with the subject-matter under the belief that the transaction has been recognized, or freely abstains, for a considerable length of time, from impeaching it, so that the other party is reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, though originally impeachable, becomes unimpeachable in equity. Even where there has been no act or language properly amounting to an acquiescence, a mere delay, a mere suffering of time to elapse unreasonably, may of itself be a reason why courts of equity refuse to exercise their jurisdiction in cases of active and constructive fraud, as well as in other instances. It has always been a principle of equity to discourage stale demands. Laches are often a defense wholly independent of the statute of limitations."

Viewed either at law or in equity, plaintiff's action must fail. Judgment will go for defendant, with leave to plaintiff, after satisfaction of the costs herein, to withdraw the sum of $41.10 heretofore paid into this court.