THE VILLAGE OF EAST MOLINE *et al.*

*v.*

CHARLES H. POPE.

*Opinion filed December 22, 1906.*

1. CONSTITUTIONAL LAW—*section 12 of article 9 is a limitation upon power of legislature to authorize indebtedness.* Section 12 of article 9 of the constitution, relating to the amount of indebtedness which may be incurred by a municipal corporation, is a limitation upon the power of the legislature to authorize the incurring of indebtedness, and all legislation in conflict with such section must yield to its provisions, regardless of the purpose of such legislation.

2. SAME—*section 12 of article 9 does not limit the rate of taxation.* Section 12 of article 9 of the constitution, limiting the amount of indebtedness which may be incurred by a municipal corporation, is not a limitation upon the amount or rate of taxes which may be raised.

3. SAME—*when city cannot issue water-works bonds.* A city indebted up to the limit imposed by the constitution has no power to issue bonds to pay for the construction of a water-works system, where such bonds are payable out of the income of the system, or, if such income is insufficient, out of a sinking fund created by levying a tax of one per cent for a certain period of years.

4. SAME—*bonds payable out of special fund raised by taxation constitute an indebtedness.* Bonds issued by a municipal corporation evidence an indebtedness within the meaning of the constitution, notwithstanding they are expressly made payable out of a special fund to be created by levying a tax for that purpose only, since all bonds issued by a municipal corporation, whether for an indebtedness within the constitutional limit or not, are, in effect, payable out of a special fund, even though it may not be actually segregated from the general funds.

WILKIN, J., dissenting.

APPEAL from the Circuit Court of Rock Island county; the Hon. W. H. GEST, Judge, presiding.

On October 13, 1905, the president and board of trustees of the village of East Moline passed a resolution authorizing its special water-works committee to advertise for bids for the erection and construction of a system of waterworks. On November 14, 1905, this committee reported that they had advertised for bids, and recommended that the sum of $32,100 be expended for said purpose. A resolution was adopted authorizing the president and clerk to enter into a contract with the parties recommended by the committee. An ordinance was passed providing for the issuing of $35,000 of bonds for the payment of said work, and for levying a tax of not more than one cent on the dollar annually on all property within the corporate limits of the village for a period of fifteen years. On November 15, 1905, in compliance with the authority vested in them, the president and clerk entered into a contract with E. W. Crellin, W. H. Jackson and B. N. Moss for the construction of the works, which contract, however, was subject to the approval of the voters of the village at a special election held on Saturday, December 3, 1905. At this election a majority of the votes were cast in favor of the ratification of the said contract. On January 18, 1906, the president and finance committee reported that they had arranged for the sale of the bonds.

At the January term, 1906, of the circuit court of Rock Island county, the appellee, Charles H. Pope, filed his bill, in which he set up the above facts and alleged that he was a citizen and tax-payer of said village; that the village authorities claimed that under an act of the legislature approved April 19, 1899, in force July 1, 1899, (Hurd's Stat. 1905, p. 344,) they had authority to issue said bonds in addition to the limit of five per cent prescribed by section 12 of article 9 of the constitution, but that in truth and in fact

said authorities had no such right; that said act is unconstitutional and void, in that it permits authorities of cities and villages to issue bonds against the tax levied under the act, and against the net revenue, if any, derived from the water-works constructed under the provisions of the act. The bill further alleged that the assessed value of property in said village for the year 1905 for State and county purposes was $241,058; that the indebtedness at the time of the passage of said ordinance providing for the issue of said bonds was, and now is, $12,052.90, the full amount allowed by law; that the issuing of said bonds creates an indebtedness against the village which, including existing indebtedness, is and will be in excess of the limit allowed by law and is in violation of the constitutional provision above cited; that said village authorities claim and pretend that they have lawful right, power and authority to levy said tax, issue said bonds, make said contract, and also to own, maintain, manage and control said water-works and appropriate and expend its money for said purpose, and that they threaten to issue said bonds and do said illegal acts.

Walter H. Ammerman, president, Frank J. Clendenin, clerk, W. A. Wahlgren, treasurer, and the village of East Moline, were made parties defendant, and the prayer of the bill was, that they, their agents or servants, be enjoined from levying said tax, certifying to the county clerk of said county the amount of tax levied under said ordinance and from issuing the bonds provided by said ordinance; also from executing the contract for the construction of said water-works, from constructing the same, from drawing any order on the village treasury for the purpose of paying for the construction or for material furnished, from expending any money for such purpose derived from the levy of said tax or the sale of said bonds, and from signing or issuing orders or warrants for the same. The parties defendant entered their appearance and filed a general demurrer, which was overruled by the court. They elected to stand by their

demurrer, and a decree was entered in accordance with the prayer of the bill. To reverse that decree an appeal has been prosecuted to this court.

J. B. & J. L. OAKLEAF, for appellants:

A municipality having reached the constitutional limit may nevertheless levy the amount of tax authorized by the law in question, provided the municipality follows strictly the procedure laid down by the legislature. A municipal obligation in excess of the constitutional limitation, to be prohibited, must be directly payable out of the general fund.

W. R. MOORE, for appellee:

A debt payable in the future, or payable upon a contingency or the happening of some event, such as the rendering of service or the delivery of property, as well as a debt payable presently and absolutely, is within the constitutional prohibition relating to the incurring of debts by municipal corporations, and it makes no difference whether the debt be for current expense or for something else. *Springfield* v. *Edwards,* 84 Ill. 626; *Chicago* v. *McDonald,* 176 id. 404; *Danville* v. *Water Co.* 180 id. 235.

Where the indebtedness of a city exceeds the constitutional limitation of five percentum of the valuation of taxable property, the city will be enjoined from the levy and collection of a tax for the purpose of paying an additional indebtedness incurred before such levy, in violation of the constitution. *Howell* v. *Peoria,* 90 Ill. 104.

If an indebtedness of a city for current expenses and supplying water is forbidden, as being in excess of the constitutional limit, the contract upon which it arose, though in itself executory and creating only a contingent liability, is also forbidden. Prohibition of the end is prohibition of the direct, designed and appropriate means. *Prince* v. *Quincy,* 128 Ill. 443.

Where a city enters into a contract to pay a sum of money when certain work shall be done and accepted, the obligation thereby assumed will constitute a debt, within the meaning of the constitutional limitation of its power to incur indebtedness. Such indebtedness will be regarded as having been incurred from the date of the contract, and not postponed to the time of the completion and acceptance of the work. *Culbertson* v. *Fulton,* 127 Ill. 30.

The issuing of obligations payable out of a particular fund creates an indebtedness, within the meaning of the constitution, if the fund is an existing, established income belonging to the city, which it thereby loses to pay the obligations. *Joliet* v. *Alexander,* 194 Ill. 457.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

Section 12 of article 9 of the constitution provides that no municipal corporation shall be allowed to become indebted, in any manner or for any purpose, to any amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness. This is a limitation on the power of the General Assembly to authorize indebtedness. All legislation in conflict with the said section must yield to its provisions. The purpose of such legislation makes no difference. It may be for the building of water-works or the erection of libraries, schools or hospitals; but if the amount of existing indebtedness of the municipality already exceeds five per cent of the assessed value the legislation is in conflict with this constitutional provision, and void. It will be observed, however, that the provision does not place a limitation upon the amount or rate of taxes to be raised, but merely upon the amount of indebtedness to be incurred.

In 1899 the General Assembly passed a statute for the purpose of enabling cities and villages to secure the benefits of water-works. This act was amended in 1905, and section 1 provides (Hurd's Stat. 1905, p. 344,) that cities and villages shall have the power to levy, in addition to the taxes now authorized by law, a direct annual tax of not more than one cent on the dollar upon all the property within its corporate limits, to be payable yearly for a period of not more than thirty years, for the sole purpose of purchasing, constructing or enlarging water-works. Sections 2 and 3 provide for the making of the contract and the submission of the same to a vote of the people for ratification. Section 5 provides that the municipal authorities shall have the power to issue bonds against the tax levy, the same to be payable only out of the special tax when collected and out of the net revenue derived from the operation of the works, which bonds are to draw interest at the rate of six per cent, and be used for the purposes specified. Section 7 provides for the form of the bond, and contains this provision: "This bond * * * is payable solely out of funds derived from special tax levy and net revenue of the water-works of the city, * * * and out of no other fund." These are the provisions of the statute under which it was sought by the village of East Moline to pass the ordinance and erect the water-works.

It is admitted by the pleadings that at the time this ordinance was passed the village was indebted to the full amount of five per cent of its assessed valuation, as provided in the constitution. It seems to be conceded that if this one percentum tax had been levied for the purpose of creating a sinking fund out of which the water-works was to be built, and no bonds were to be issued, the ordinance would be valid and not in conflict with the constitutional limitation, for the reason that the constitutional limitation is not against the rate of taxation but against the amount of indebtedness. But it is insisted by appellee that the issuing of the bonds

will create an indebtedness which will be in contravention of the constitutional limitation. On the other hand, it is insisted by appellants that inasmuch as the bonds were to be payable solely out of the special tax levied and the net revenue of the water-works, the bonds would not be an indebtedness, within the meaning of the constitution.

Many cases in which we have defined the term "indebtedness," as used in the constitution, are cited. One of the earliest of these cases is *City of Springfield* v. *Edwards,* 84 Ill. 626, in which we held that the indebtedness specified in the constitution is the voluntary incurring of a legal liability to pay; that a debt payable in the future is no less a debt than if payable presently, and a debt payable upon a contingency, as upon the happening of some event, such as the rendering of service or delivery of property, is no less a debt, and therefore within the inhibition; that if a contract or undertaking contemplates a liability to pay, the debt exists; and it makes no difference whether the debt be for necessary current expenses or for something else,—it is nevertheless an indebtedness contemplated by the constitution. To the like effect are the following: *Law* v. *People,* 87 Ill. 385; *Howell* v. *City of Peoria,* 90 id. 104; *Culbertson* v. *City of Fulton,* 127 id. 30; *Prince* v. *City of Quincy,* 128 id. 443; *City of Chicago* v. *McDonald,* 176 id. 404.

In the case of *City of Joliet* v. *Alexander,* 194 Ill. 457, it was sought to issue bonds for the purpose of securing money under the act in question to enlarge a system of water-works already in existence. As security for the bonds the water-works already in existence, together with an annual revenue of about $10,000, was to be pledged, and we held that, inasmuch as the city owned a valuable piece of property which was producing a large annual revenue, the pledge of that property and the revenue as security to obtain money with which to enlarge the plant was incurring an additional indebtedness in excess of that limited by the constitution, and the city was without authority to do so. But on page

463 we said: "What is said relative to mortgaging property owned by the city or pledging its existing income is not intended to apply to a mortgage, purely in the nature of a purchase money mortgage, payable wholly out of the income of property purchased or by resort to such property. This is not a case where there is no obligation of the city except the performance of a duty in the creation and management of a fund, and where the water-works, upon paying for themselves, will become the property of the city."

In the case at bar it is manifest that if nothing but the income from the water-works was pledged or could be reached to satisfy the principal and interest of the bonds the case would be within the meaning of the language last quoted, but here revenue of the village to be obtained by general taxation to the extent of one cent on the dollar of taxables must be applied to the payment of this indebtedness if the income from the water-works proves insufficient to satisfy it.

Appellants' reasoning, to state it more at large, is this: that as the constitution is silent on the question of the amount of tax that may be levied and as the statute authorizes the levy of this one percentum, there is nothing to prevent the municipality incurring an indebtedness beyond the constitutional limit if it is to be paid by this tax; that as a special fund is to be derived from the one percentum, which fund can only be applied to the payment of the bonds, and as they cannot be paid out of any other portion of the ordinary revenue of the village, they should not be regarded as an indebtedness within the meaning of the constitution, the conclusion being, that a municipal obligation in excess of the constitutional limitation is not prohibited unless directly payable out of the general funds of the municipality.

The section of the constitution above referred to requires that when any municipality incurs a bonded indebtedness which is within the constitutional limit it shall provide for the collection of a direct annual tax sufficient to pay the inter-

est on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time the debt was contracted.

A special fund should be provided to meet an indebtedness within the constitutional limit, and there is therefore no distinction in this regard between the bonds which the appellant village proposes to issue and bonds which would be within the constitutional limit, as a special fund to be raised by general taxation is provided to pay the bonds in either instance.

Inasmuch as the village could be required to satisfy these bonds with money derived from the one percentum tax if the income from the water-works proved insufficient to meet them, we regard the indebtedness which they evidence as within the constitutional prohibition. If it were otherwise, the legislature could authorize the issuance of bonds for any proper municipal purpose in any amount, to be paid out of a tax levied for the special purpose of paying them, and thereby render nugatory the constitutional provision limiting municipal indebtedness.

The decree of the circuit court of Rock Island county will be affirmed.                     *Decree affirmed.*

Mr. JUSTICE WILKIN, dissenting:

The holding of this court has always been that a municipal corporation which has reached the constitutional limit of its power to create indebtedness may, when a tax is levied but not yet collected, draw warrants against the fund already levied, thus appropriating and virtually assigning the amount specified in the warrant, which, when collected, the holder will have the right to receive, and when it is thus sought to apply the fund created by the levy of taxes in anticipation of their collection to meet lawful appropriations, contracts for that purpose, payable exclusively out of such appropriations when the revenue shall be collected, are not regarded as contracting indebtedness against the municipal-

ity. (*Law* v. *People,* 87 Ill. 385; *Fuller* v. *Heath,* 89 id. 296;
*City of Springfield* v. *Edwards,* 84 id. 626.)   None of the
cased cited are, however, directly in point here, and, so far
as I have been able to discover, the exact question now be-
fore us for decision has never been decided by a court of last
resort, unless it be in the case of *Winston* v. *City of Spo-
kane,* 41 Pac. Rep. 888.   There the Supreme Court of
Washington had before it for review a case similar to this.
The constitution of the State of Washington as to the limi-
tation of municipal indebtedness is, so far as I am informed,
similar to, if not identical with, ours.   The city of Spokane
attempted to build a system of water-works and make the
bonds payable out of the water-works fund.   It was already
indebted to the amount limited by the constitution, and the
question before the court was whether the bonds created an
additional indebtedness against the city, and it was said,
after stating the facts: "This being so, we are of the opin-
ion that neither the ordinance, the contract, nor the obliga-
tions to be issued by the city in pursuance thereof, do or will
constitute a debt of the city within the constitutional defini-
tion.   The only obligation assumed on the part of the city
is to pay out of the special fund, and it is in no manner
otherwise liable to the beneficiary under the contract.   The
general credit of the city is in no manner pledged, except
for the performance of its duty in the creation of such special
fund.   The transaction, therefore, is no more the incurring
of an indebtedness on the part of the city than is the issue
of warrants payable out of a special fund created by an as-
sessment upon the property to be benefited by a local im-
provement."

This, in my opinion, is the proper construction to be
placed upon the statute here in question and the ordinance
passed thereunder.   The village of East Moline had no sys-
tem of water-works.   Bonds to the extent of $35,000 were
to be issued and sold.   Out of this fund a system of water-
works was to be erected.   The bonds to be issued must spe-

cifically state upon their face that they are to be paid out of the special tax levy and the net revenue of the water-works system, and out of no other fund. The general credit of the village was not to be pledged to the payment of the bonds. The only security which the bondholders will have for their payment will be the revenue derived from the institution built by the money obtained from the bondholders. In an action to enforce the payment of the bonds, the remedy would be against the water-works and the water-works fund to compel the municipal authorities to so manage them that they would produce a sufficient fund out of which the indebtedness could be paid. If the village had sought to pledge the fund derived from dram-shop licenses, or licenses from hackmen, peddlers, theaters or amusements, or any other funds of the city, it would have created an indebtedness prohibited by the constitution. (*City of Joliet* v. *Alexander,* 194 Ill. 457.) But in view of the fact that it was attempting to encumber the property which was to be paid for out of the funds derived from the property itself, after which it was to become the property of the village, it was not attempting to create an indebtedness prohibited by the constitution. To hold otherwise would, in effect, render invalid all bonds issued for special assessments. Such bonds are issued by the municipal authorities and are payable solely out of the funds derived from the special assessments for which they are levied. The municipality is in no way responsible for them, except to use every effort to see that the money is collected when it becomes due. If special assessment bonds were construed as an indebtedness within the constitutional limitation, very few, if any, public improvements could be made.

I am of the opinion that the bonds about to be issued would not create an indebtedness against the village in violation of the constitution so long as they pledged only the funds derived from the system of water-works authorized by the statute.