---

(No. 11274.—Reversed and remanded.)
C. C. LEONARD, Appellant, *vs.* THE CITY OF METROPOLIS, Appellee.

*Opinion filed April 19, 1917.*

1. MORTGAGES—*mortgagor is the owner of mortgaged premises as against all but mortgagee.* As against everybody but the mortgagee the mortgagor is the owner of mortgaged premises, and his title and interest are subject to the laws of descent and conveyances and liable to the claims of creditors.

2. MUNICIPAL CORPORATIONS—*issuance of public utility certificates under the Municipal Ownership act of 1913 creates a debt against the city.* The issuance of public utility certificates under the Municipal Ownership act of 1913, to be secured by a mortgage on the city light and water plant and its proposed extensions and additions, the income from the operation of the plant being pledged for the payment of the certificates, creates an indebtedness

which will be unlawful if the city is already indebted to the constitutional limit; and this is true though the plant is already mortgaged to secure bonds which the city proposes to pay with a portion of the proceeds of the public utility certificates. (*City of Joliet* v. *Alexander,* 194 Ill. 457, followed.)

Appeal from the Circuit Court of Massac county; the Hon. Julius Kern, Judge, presiding.

W. L. Krone, for appellant.

Roy R. Helm, City Attorney, and H. A. Evans, for appellee.

Mr. Justice Farmer delivered the opinion of the court:

C. C. Leonard, appellant, a resident tax-payer of the city of Metropolis, Illinois, filed his bill in the circuit court of Massac county seeking to enjoin said city of Metropolis and its officers from issuing $82,000 in public utility certificates and securing the payment of the same by a mortgage on its present light and water plant and on contemplated extensions and additions thereto.

The bill alleged the city of Metropolis is, and since 1892 has been, the owner of and operating its light and water plant, furnishing water, light and power to itself, its citizens and patrons at rates prescribed by ordinance; that the reasonable present value of said plant is $100,000; that said plant was originally constructed by George C. Morgan at a cost of $41,000, who laid water mains and pipes, erected electric light poles and strung wires thereon through the streets and alleys of said city; that said Morgan sold bonds to the extent of $41,000, the payment of which, with interest thereon for twenty years, was secured by mortgage on the said property, rights, privileges and franchises; that after the completion of the plant and sale of the bonds the city purchased said plant of Morgan, paying him $10,000 therefor and assuming the payment of said bonds and in-

terest.  The bill avers that of the $41,000 of bonds issued $22,000 have been paid, leaving $19,000 unpaid; that prior to October 31, 1916, the total amount of indebtedness of said city, exclusive of the $19,000 unpaid bonds standing against the light and water plant, was $57,800, being more than five per cent of $943,277, the assessed value of all taxable property in said city; that prior to October 31, 1916, said city, being desirous of extending and enlarging its light and water plant and installing new machinery, did on October 2, 1916, by its council adopt an ordinance providing for such extension and enlargement, and authorized the city, subject to the approval of its electors, to issue and dispose of public utility certificates in accordance with an act entitled "An act to authorize cities to acquire, construct, own, and to lease or operate public utilities and to provide the means therefor," approved June 26, 1913, in force July 1, 1913, (Hurd's Stat. 1916, p. 2049,) in the amount of $82,000, to run for twenty years and bear five per cent interest per annum.  The bill avers that out of the $82,000 to be so raised the $19,000 outstanding bonds were to be paid and the remainder used in extending the water and light plant and purchasing new machinery; that at an election held October 31, 1916, the electors of said city adopted the ordinance and authorized the city council to issue said certificates.  The bill avers that after the city acquired the light and water plant from Morgan it adopted an ordinance creating a light and water fund, and ordered all money arising from the sale of service of said plant placed in the water and light fund, to be used in paying the current or running expenses of said plant, and the balance or net profits remaining to be used for the payment and cancellation of the bonds outstanding against said plant; that the net annual earnings of said plant amount to $3000, and with the extensions and additions proposed will amount to $9000 annually.  The bill avers that notwithstanding the city is in debt beyond the constitutional limitation it intends to

278 – 19

issue said $82,000 public utility certificates under authority of the act of June 26, 1913, and the ordinance passed in pursuance thereto, and that said act, in so far as it authorizes the issue of public utility certificates, secured by a mortgage on city property, in excess of the amount limited by the constitution, is void, and asks that the city and its officers be enjoined from issuing said certificates. The trial court sustained a demurrer to the bill, and appellant electing to stand by his bill the same was dismissed for want of equity. This appeal follows.

The act of June 26, 1913, known as the Municipal Ownership act, gives cities the power to acquire, construct, own and operate public utilities. The act provides or enumerates the means by which cities may procure the funds with which to purchase and acquire such utilities. Section 8 of the act authorizes the borrowing of money and the issuing of negotiable bonds therefor, pledging the faith and credit of the city. Section 10 authorizes the securing of money by special assessment. Section 9 authorizes or prescribes the means here sought to be employed, and reads as follows: "For the purpose of acquiring any such public utility or the property necessary or appropriate for the operation thereof, or any part thereof, either by purchase, condemnation or construction, any city may issue and dispose of interest-bearing certificates, hereinafter called public utility certificates, which shall, under no circumstances, be or become an obligation or liability of the city or payable out of any general fund thereof, but shall be payable solely out of the revenues or income to be derived from the public utility property for the acquisition of which they were issued. Such certificates shall not be issued and secured on any public utility property in an amount in excess of the cost to the city of such property as herein before provided and ten per cent of such cost in addition thereto. In order to secure the payment of any such public utility certificates and the interest thereon, the city may convey,

by way of mortgage or deed of trust, any or all of the public utility property acquired or to be acquired through the issue thereof."

The demurrer to the bill of complaint admitted the city to now be in debt to an amount beyond the constitutional limitation, and the sole question here presented and argued is whether the issuance of the public utility certificates, to be secured by a mortgage on the present light and water plant and its proposed extensions and additions, is an indebtedness against the city. If it is such indebtedness, being in excess of the amount of indebtedness that may be legally contracted for by a city, it is violative of section 12 of article 9 of the constitution and void.

Section 12 of article 9 of the constitution provides: "No county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness."

The statute before quoted, and the ordinance passed pursuant thereto, both provide the payment of such certificates is to be made only out of the revenues arising from the operation of the light and water plant, and it is argued such arrangement or provision does not increase the indebtedness of the city and hence is not in violation of the constitutional inhibition, and also that the city is not mortgaging or intending to mortgage any property it holds the legal title to.

In 1899 the legislature passed an act entitled "An act authorizing cities, towns and villages to build, purchase or extend water-works systems for public and domestic use and to provide for the cost thereof." (Laws of 1899, p. 104.) The act authorized cities and villages to acquire water-works or enlarge or extend an existing system and pay for

the same by issuing certificates of indebtedness payable solely out of the water fund provided for in the act. The act contained provisions for the setting aside and protecting of the water fund to prevent its being diverted to any other purpose than payment of the certificates issued for the money obtained to acquire or enlarge a water-works system. Cities and villages were authorized to secure the payment of said water certificates by mortgage or deed of trust upon the water-works system so acquired or enlarged. The construction of this act first came before this court in *City of Joliet* v. *Alexander,* 194 Ill. 457. The city of Joliet owned a water-works system and operated it to supply water to the city and its inhabitants. It derived a net income from the operation of the plant of about $10,000 annually. It sought to extend and enlarge said system under the act of 1899 by issuing water certificates to the amount of $240,000, to be paid out of the water fund under the terms and provisions of said act. The ordinance provided that the entire proceeds of the water-works system should be paid into a water fund, no part of which should be paid out for any other purpose than the necessary operating expenses of the water-works system and the payment of water certificates and interest until they were fully paid. The city of Joliet was indebted in excess of the constitutional limit, and a resident tax-payer filed a bill to enjoin the mayor and other city officers from entering into the contract for the extension of the water-works system and from executing and delivering the water certificates and the mortgage or trust deed to secure them. It was contended by the city there, as here, that the water certificates issued under the act of 1899 and payable only out of the fund arising from the operation of the water-works system did not constitute an indebtedness of the city. This contention was not sustained. The court held that mortgaging the city's property to secure payment of the water certificates was the creation of a debt by the city within the meaning of

the constitutional prohibition, and the bill to enjoin the city officers was sustained.

It is not denied that the *Joliet case* is decisive of the question here involved if the city of Metropolis owned the water-works system it proposed to enlarge, but it is contended that case is distinguishable from the case at bar because it is asserted the city of Metropolis does not own the water-works system; that it owns only an equity of redemption and that the legal title is in the mortgagee. We think this position unsound. The water-works system is alleged in the bill, and it is admitted by the demurrer, to be of the value of $100,000. It was purchased by the city subject to a mortgage to secure $41,000 of an indebtedness, $22,000 of which has been paid, leaving the balance secured by the mortgage $19,000. As against everybody but the mortgagee the mortgagor is the owner of the mortgaged premises, and his title and interest is subject to the laws of descent and conveyances and liable to the claims of creditors. *Vallette* v. *Bennett,* 69 Ill. 632; *Barrett* v. *Hinckley,* 124 id. 32; *Seaman* v. *Bisbee,* 163 id. 91; 20 Am. & Eng. Ency. of Law, 901; 27 Cyc. 959.

The bill alleges, and the demurrer admits, the city of Metropolis is in receipt of a net annual income from the water-works system of $3000. In *City of Joliet* v. *Alexander, supra,* it was said: "In addition to mortgaging the existing system the ordinance proposes to take the income now derived from it, amounting to about $10,000 a year, and devote it to the payment of the certificates. This is existing property and income of the city derived annually from the present system of water-works, independent of the extension and in no manner resulting from or depending upon it. The city is to lose property in the form of established income for the purpose of paying the certificates. If the city, being indebted beyond the constitutional limit, can issue certificates payable out of that fund without creating a debt, it would be equally within its power to issue

obligations by pledging the fund derived from dram-shop licenses, or licenses from hackmen, peddlers, theaters or amusements, or any other funds of the city. All of the revenues of the city, except such as would be derived from general taxation, might in that way be pledged or mortgaged for long years to come, and we apprehend that no one would be found to say that such a scheme would not be a mere evasion of the constitution." In *Schnell* v. *City of Rock Island,* 232 Ill. 89, it was said: "A city may acquire a system of water-works by pledging the income until it shall pay for the system, and no indebtedness is created. The same rule might apply to some definite extension of water-works where the income of the extension could be separated and applied to payment, but an obligation to pay with the income of property already owned by a city is not different from an obligation to pay with any other funds, so far as the question whether the transaction amounts to a debt is concerned."

The act under which the cases above referred to were decided, leaving out of consideration the amendment of 1905 authorizing a special tax of one cent on the dollar, is not substantially different from the present act. The act of 1899 limited the payment of water certificates issued for the purpose of purchasing or extending a water-works system "solely to the water fund hereinafter provided for." The present act provides that such certificates shall not be or become an obligation of the city payable out of any general fund, but shall be payable solely out of the revenues derived from the public utility or property for the acquisition of which they were issued. The *Joliet case* not only held that the city could not issue certificates for the extension of its water-works system and secure their payment by a mortgage upon the plant it then owned, where the city was already indebted to the constitutional limit, but also held that it could not mortgage or pledge the income then being derived from said system owned by it. That is pre-

cisely one of the things that is proposed to be done here. The city of Metropolis proposes not only to mortgage the plant it now owns, but also the income it receives from the operation of the plant, to secure the payment of the water certificates or public utility certificates. In our opinion this case is not distinguishable from the *Joliet case,* and the court erred in sustaining the demurrer to and dismissing the bill.

The decree is reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*