148 So. 111

## In re OPINIONS OF THE JUSTICES.

## In re ACT AUTHORIZING MUNICIPALI-
## TIES TO PURCHASE OR CONSTRUCT
## WATERWORKS SYSTEMS, etc.
### No. 26.

Supreme Court of Alabama.
May 11, 1933.

Response to questions propounded by Governor.

Questions propounded by the Governor to the Justices of the Supreme Court, under Code 1923, § 10290.

Questions answered.

April 10, 1933.

To the Justices of the Supreme Court of Alabama,

Gentlemen: Will you please give me a written opinion, as provided by Section 10290 of the Code of Alabama, on the following constitutional questions:

The Legislature has adopted an Act, known as House Bill No. 385, which was approved by me March 29, 1933. Under this Act several municipalities are proposing to issue and offer for purchase by the Reconstruction Finance Corporation, bonds without submitting the question to a vote of the people of the municipalities.

Will you please advise me as follows:

1. Is this Act violative of Section 222 of the Constitution of Alabama of 1901, in that said Act permits the issuance of bonds without a majority vote by ballot of the qualified voters of the municipality?

2. Where the municipality authorizes and issues bonds under authority of this Act for the purpose of constructing a waterworks system (such municipality not having a waterworks system) and offers to pledge as security for the payment of the bonds the gross revenues to be derived from the operation of the waterworks system, as provided in said Act, do such bonds constitute an indebtedness of the municipality within the provisions of Section 225 of the Constitution?

3. Where a municipality now owns and operates its waterworks system, for the acquisition or construction of which there are not now outstanding and unpaid any bonds or other obligations of such municipality, and the municipality proposes to construct improvements and extensions to such existing system and for that purpose authorize and issue bonds under authority of the said Act,

and pledge to the payment of such bonds the gross revenues derived from the operation of the entire waterworks system, all in accord with said Act, does the issuance of such bonds under such circumstances constitute the incurring of an indebtedness by such municipality within the meaning of Section 225 of the Constitution, and is such municipality issuing such bonds under said Act limited in the amount thereof by the limits imposed by Section 225 of the Constitution of Alabama?

Respectfully,

B. M. Miller, Governor.

The title of the act referred to is as follows:

An act to authorize any county, city or incorporated town of the State of Alabama, subject to the limitations herein stated, to purchase or construct a waterworks system, water supply system, sewer system, sanitary disposal equipment and appliances, or gas system, and in furtherance thereof to purchase or construct any necessary part of any such system either within or without the limits of such county, city or incorporated town, as the case may be; and to authorize any county, city or incorporated town of the State of Alabama now or hereafter owning and operating any such system to improve, enlarge, extend or repair the same; and for any such purpose or purposes to authorize any such county, city or incorporated town to issue revenue bonds payable solely from the revenues derived from the operation of any such system or systems; to regulate the issuance, sale, retirement and refunding of such bonds and of other matters in connection therewith; to regulate the use of the revenues of such system or systems when such bonds are issued or outstanding; to provide for the operation of any such system or systems in case of deficiencies in such revenues; to confer upon the State Board of Health certain powers with reference to any such sewer system; and for other purposes.

### Response of the Justices.

To Hon. B. M. Miller, Governor of Alabama, Montgomery.

Sir: In response to your inquiry of April 10, 1933, concerning House Bill No. 385, the advisory opinion of the justices of the Supreme Court follows:

In our opinion pursuant to your inquiry of January 14, 1933 (145 So. 481), relating to a bill similar in some respects to House Bill No. 385, referred to in your inquiry of April 10, 1933, we expressed the view that such act did not create a debt contemplated by section 225 of the Constitution. The act then considered authorized the purchase or construction of a waterworks system or the construction of betterments and improvements to an existing plant. It was in two parts, one related to the acquisition of a system not then owned, and another part related to betterments and improvements to one theretofore owned. It provided that the new system may be mortgaged and created a statutory lien on the property and pledged the revenue from it, but no other revenue of the city was pledged, nor did the city otherwise agree to pay the debt.

In respect to betterments of an existing system, the city was required to make a valuation of it without the proposed additions and also to value the proposed improvements, and to apportion the revenue to be derived thereafter pursuant to the respective valuations so that the proportionate part due to such improvements shall be set apart and used solely for paying for such betterments. That part not so derived was in no respect pledged, nor was the existing system to be mortgaged to secure funds for the betterments, unless segregation of the income on such proportionate basis is deemed inappropriate, and in that event it is provided that a second lien may be created subordinate to any such as may then be outstanding. We did not think it necessary to discuss the subject.

We now wish to say in answer to your last inquiry that we are still impressed that such opinion correctly interpreted section 225, provided the existing system may not be made subject to a lien to secure the payment of the new funds to make such extension, etc., as we will here further illustrate. We will now enlarge upon that opinion somewhat that there may be no misunderstanding of its effect.

"A city may acquire a system of waterworks by pledging the income until it shall pay for the system, and no indebtedness is created. The same rule might apply to some definite extension of waterworks where the income of the extension could be separated and applied to payment, but an obligation to pay with the income of property already owned by a city is not different from an obligation to pay with any other funds, so far as the question whether the transaction amounts to a debt is concerned." Schnell v. City of Rock Island, 232 Ill. 89, 83 N. E. 462, 464, 14 L. R. A. (N. S.) 874; Smith v. Neosho, 203 Mo. 40, 101 S. W. 99; Fox v. Bicknell, 193 Ind. 537. 141 N. E. 222.

But in respect to a system not then acquired, it is said in Joliet v. Alexander, 194 Ill. 457, 62 N. E. 861, 863: "In addition to mortgaging the existing system, the ordinance proposes to take the income now derived from it, amounting to about $10,000 a year, and devote it to the payment of the certificates. This is existing property and income of the city derived annually from the present system of waterworks, independent of the extension, and in no manner resulting from or depending upon it. The city is to lose property in the form of established income for the purpose of paying the certificates. If the city,

being indebted beyond the constitutional limit, can issue certificates payable out of that fund without creating a debt, it would be equally within its power to issue obligations by pledging the fund derived from dram-shop licenses, or licenses from hackmen, peddlers, theaters or amusements, or any other funds of the city. All of the revenues of the city, except such as would be derived from general taxation, might in that way be pledged or mortgaged for long years to come, and we apprehend that no one would be found to say that such a scheme would not be a mere evasion of the constitution."

The same principle is emphasized in a later case, and thus expressed: "If all that is proposed to be done in this case is to pledge the property, and its income, which is purchased with the proceeds of said street railway certificates when issued and sold to secure the payment of said certificates, then, under the doctrine of Winston v. Spokane, 41 P. 888, 12 Wash. 524, which has been approved in City of Joliet v. Alexander and Village of East Moline v. Pope, supra [224 Ill. 386, 79 N. E. 587], there would be no indebtedness, within the constitutional inhibition, created by the issue and sale of said street railway certificates and the execution of said trust deed or mortgage, as against the city." Lobdell v. Chicago, 227 Ill. 218, 81 N. E. 354, 359.

This distinction seems also to be approved in Bell v. Fayette, 325 Mo. 75, 28 S.W.(2d) 356.

It has also been held by the Illinois court that existing system is of that class, though there is a mortgage on it existing when it was acquired where the city only acquired the equity of redemption, and the proposal is to pay off the mortgage debt, and make extensions, etc. Such proposal was held to pledge revenue then going into the general funds of the city. Leonard v. Metropolis, 278 Ill. 287, 115 N. E. 813.

In those cases provision was made for the foreclosure of the mortgage on the property, though emphasis is made upon the fact that a debt is created when funds of a city, which are subject to its general disposal, are withdrawn from their power, and are required to be devoted solely to the liquidation of the new claim.

But in some cases the question is said to be affected by the power to foreclose the mortgage, even though it may relate solely to property not theretofore owned by the city. Lesser v. Warren, 237 Pa. 501, 85 A. 839, 43 L. R. A. (N. S.) 839.

But there are many courts which hold that it does not create a debt to purchase new equipment or improve an existing system, when the only promise to pay is out of the proceeds of the reconstructed plant, without being limited to the increased revenue or to that proportion of the whole which the value of the improvement bears to the whole value. Jones v. Corbin, 227 Ky. 674, 13 S.W.(2d) 1013; Barnes v. Lehi City, 74 Utah, 321, 279 P. 878; Shelton v. Los Angeles, 206 Cal. 544, 275 P. 421; Johnston v. Stuart (Iowa) 226 N. W. 164; Brokenbrough v. Charlotte, 134 N. C. 1, 46 S. E. 28; Winston v. Spokane, 12 Wash. 524, 41 P. 888.

House Bill No. 385, though it creates a lien, does not permit a foreclosure and has many provisions similar to those discussed in Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004, for the operation of the plant by a receiver under certain conditions and the fixation of sufficient rates. That bill makes no distinction between funds for extensions and betterments on the one hand and for the purchase or construction of a system on the other.

■ Our view is that, if the proposal is to pledge the revenue from an existing system or the system itself to the payment of funds used in making extensions or improvements, there is a debt created in violation of section 225 of the Constitution, when the debt limit therein provided has been reached, and that the result is not controlled by the inability to foreclose the mortgage. For, if the property once owned by the city may be thereby taken out of its control and operation, and put in the control of a receiver for the bondholders and the income from its operation may be taken away from the city, such authority has the effect of creating a debt, though no foreclosure is authorized. Thereby the effects theretofore owned by the city became subject to be taken from it and devoted to the payment of the claim. This creates a debt, though its payment is thus limited.

■ But, when the city purchases or constructs a system, no part of which has been owned theretofore by it, and no revenue theretofore created from it, the pledge of it and the income from it, with no other obligation of the city to pay the price in any respect does not divert funds or property of the city which could have been used for other purposes nor does it otherwise create a debt. Under such circumstances it would not be affected by section 225 of the Constitution.

■ We are also of the opinion that the bonds regulated and controlled by section 222 of the Constitution are such only as create in some form a debt of the city. We think the purpose of that provision of the Constitution is to prohibit a city from creating a bonded debt without authority conferred by the people in an election. This purpose is emphasized by the last sentence in that section.

■■ Our answer to your inquiry is that our conclusions are dependent upon whether the utility system involved is new to the city ownership. If so, we think the act does not violate section 222 or 225 of the Constitution, when nothing else is pledged for its security.

But, if an existing system or the income from such system, or any other property then owned or any other existing income, is burdened or further burdened by a pledge to pay for the betterments, both 222 and 225 have application.

Respectfully,

JOHN C. ANDERSON,
Chief Justice.
LUCIEN D. GARDNER,
WILLIAM H. THOMAS,
VIRGIL BOULDIN,
JOEL B. BROWN,
ARTHUR B. FOSTER,
THOMAS E. KNIGHT,
Associate Justices.