175 So. 380

## SMITH v. WATERWORKS BOARD OF CITY OF CULLMAN et al.

### 6 Div. 163.

Supreme Court of Alabama.

June 24, 1937.

Earney Bland, of Cullman, for appellant.

St. John & St. John, of Cullman, for appellees.

THOMAS, Justice.

The suit prayed for an injunction against the city of Cullman and the officials thereof.

The appropriate pleadings present for review the action under the General Act of March 2, 1937. (Acts Extra Session 1936–37, No. 228, p. 274). It is conceded that the municipality would have exceeded its debt limit, if the expenditure proposed is a debt or liability of that municipality.

The act in question provided for the incorporation of a waterworks board, under the following designation and title:

"To provide for and authorize the incorporation of a Water Works Board for the several cities and incorporated towns of Alabama; to provide for the powers and duties of such Water Works Board; to authorize such board, subject to the limitations herein stated, to purchase or construct a water works system, water supply systems, and all necessary equipment and appliances incident thereto; to authorize such city or incorporated town to purchase from said Water Works Board a sufficient supply of water necessary to supply the inhabitants of such city or incorporated town and surrounding territory; to authorize such board to borrow money and to issue revenue bonds to secure the same, payable solely from the revenues derived from the operation of such system or systems; to regulate the issuance, sale, and refunding of such bonds and of other matters in connection therewith; to regulate the use of revenues of such system or systems when such bonds are issued or authorized; to confer on such board the right of eminent domain."

■ The powers conferred on the corporation are ample and to the end to be attained, and the remedy to be afforded. The title employed is singular. The body of the act is responsive to the title employed and within the provisions and constructions given section 45 of the Constitution. Ex parte Pollard, 40 Ala. 77.

The powers of the board are specifically enumerated and declared in sections 5, 6, and 7 of the act. Among such powers are:

"To contract for the sale and to sell its water supply or any part thereof to such city or town for distribution to the inhabitants thereof and surrounding territory. (6) To exercise all powers of eminent domain now or hereafter conferred on municipalities in this State. (7) * * * Any such corporation which borrows money under the provisions of this Act, may pledge, create a lien upon and mortgage any such plant, or any one or more of them, or any part or parts thereof, together with the pipe lines, improvements, and appurtenances thereto and all other property, tangible and intangible, and of like and different kind, including franchise, acquired, constructed, or installed by means of money borrowed under the authority of this Act, and also on all or any part of revenues derived from the operation of such plant or plants, or any one of them, or any part or parts, thereof, as security for the repayment of such borrowed money, with interest." Section 5.

In addition, it is provided, as to security for its debt incurred, that the board may contract for " * * * the proper application of money borrowed from such lender, and for the operation and maintenance of any such plant, or any one or more of them, or any part or parts thereof, and for the imposition, collection, safeguarding, and application, disposition, and remittance of reasonable rates for water supply and service, and for the promulgation of reasonable regulations, relating to rates and service for any other act, series of acts, duty or thing, not inconsistent with the provisions of this Act for the protection of the lenders loan and the assurance of a reasonable return upon the properties in which such loan is invested, out of which operating expenses and the principle and interest of such loan may be met." Section 6.

"Section 7. Any such corporation which borrows money under the authority of this Act may evidence the loan by an instrument or instruments, in such forms and of such tenor and maturity as may be agreed upon between lender and borrower. * * * *No such city shall be liable for any debt created by such corporation under the provisions of this Act, nor shall such debt be construed to be an indebtedness against such city.*" (Italics supplied.)

The pleading fully indicates the fact that it is the proposal of the parties to this suit to incorporate under the act, incur the necessary liability to the end of constructing or acquiring a sufficient water supply for the municipality named above, and to secure the payment of moneys so secured and used in the right prosecution of that purpose and end.

The proceeding therefore involves the validity of a proposed issue of bonds, secured by the mortgage of the corporation, for the construction of such new and additional utility and facilities for the efficient operation of the waterworks system of the city of Cullman, and with particular reference to sections 222 and 225 of the Constitution.

■ The right of a municipality, as a necessary incident of that community life, to provide and secure an ample water supply and to administer the same by appropriate works and ways in its distribution to the people cannot be gainsaid. The municipality's general powers and that of necessity are described in Fort Payne Co. v. City of Fort Payne, 216 Ala. 679, 114 So. 63, and in 3 McQuillin Munic. Corp. § 1108.

The bridge decisions that may be consulted with interest in this connection are Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695; Scott v. Alabama State Bridge Corp., 233 Ala. 12, 169 So. 273; Rogers et al. v. Garlington, ante, p. 13, 173 So. 372; Long, President, v. Alabama Highway Corp., ante, p. 142, 174 So. 41.

The right to pledge the segregated funds in question for the appropriate purpose of payment of bonds and interest thereon of such corporations was upheld in Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695, and in Lee v. City of Decatur, 233 Ala. 411, 172 So. 284, and also in Rogers et al. v. Garlington, supra.

In the recent decision of Randall, Clerk, v. State ex rel. City of Tuskegee, 233 Ala. 446, 172 So. 277, is the affirmance of In re Opinions of the Justices, 226 Ala. 570, 148 So. 111, 113. In the latter opinion are the following observations:

"We now wish to say in answer to your last inquiry that we are still impressed that such opinion correctly interpreted section 225, provided the existing system may not be made subject to a lien to secure the payment of the new funds to make such extension, etc., as we will here further illustrate. We will now enlarge upon that opinion somewhat that there may be no misunderstanding of its effect.

" 'A city may acquire a system of waterworks by pledging the income until it shall pay for the system, and no indebtedness is created. The same rule might apply to some definite extension of waterworks where the income of the extension could be separated and applied to payment, but an obligation to pay with the income of property already owned by a city is not different from an obligation to pay with any other funds, so far as the question whether the transaction amounts to a debt is concerned.' Schnell v. City of Rock Island, 232 Ill. 89, 83 N.E. 462, 464, 14 L.R.A. (N.S.) 874; State ex rel. Smith v. Neosho, 203 Mo. 40, 101 S.W. 99; Fox v. Bicknell, 193 Ind. 537, 141 N.E. 222.

"But in respect to a system not then acquired, it is said in City of Joliet v. Alexander, 194 Ill. 457, 62 N.E. 861, 863: 'In addition to mortgaging the existing system, the ordinance proposes to take the income now derived from it, amounting to about $10,000 a year, and devote it to the payment of the certificates. This is existing property and income of the city derived annually from the present system of waterworks,

independent of the extension, and in no manner resulting from or depending upon it. The city is to lose property in the form of established income for the purpose of paying the certificates. If the city, being indebted beyond the constitutional limit, can issue certificates payable out of that fund without creating a debt, it would be equally within its power to issue obligations by pledging the fund derived from dram-shop licenses, or licenses from hackmen, peddlers, theaters or amusements, or any other funds of the city. All of the revenues of the city, except such as would be derived from general taxation, might in that way be pledged or mortgaged for long years to come, and we apprehend that no one would be found to say that such a scheme would not be a mere evasion of the constitution.'

"The same principle is emphasized in a later case, and thus expressed: 'If all that is proposed to be done in this case is to pledge the property, and its income, which is purchased with the proceeds of said street railway certificates when issued and sold to secure the payment of said certificates, then, under the doctrine of Winston v. Spokane, 12 Wash. 524, 41 P. 888, which has been approved in City of Joliet v. Alexander and Village of East Moline v. Pope, supra, 224 Ill. 386, 79 N.E. 587, there would be no indebtedness, within the constitutional inhibition, created by the issue and sale of said street railway certificates and the execution of said trust deed or mortgage, as against the city.' Lobdell v. Chicago, 227 Ill. 218, 81 N.E. 354, 359.

"This distinction seems also to be approved in Bell v. Fayette, 325 Mo. 75, 28 S.W.(2d) 356. * * *

"We are also of the opinion that the bonds regulated and controlled by section 222 of the Constitution are such only as create in some form a debt of the city. We think the purpose of that provision of the Constitution is to prohibit a city from creating a bonded debt without authority conferred by the people in an election. This purpose is emphasized by the last sentence of that section."

In the case of Oppenheim v. City of Florence, 229 Ala. 50, 155 So. 859, 864, the like views are approved. It is there said:

"The obligation of the city to fix and maintain rates sufficient to pay the principal and interest with the stipulation that its breach shall never constitute an indebtedness is likewise a covenant *to do an act,*

and not to pay money, as a present liability, and, if the city shall violate the covenant, it is not subject to pecuniary damages for so doing, by the very terms of the contract. * * *

"Emphasis is laid upon a prohibition in the Constitution there considered against creating a 'liability.' Feil v. Coeur d'Alene, 23 Idaho, 32, 129 P. 643, 43 L.R.A.(N.S.) 1095; Miller v. Buhl, 48 Idaho, 668, 284 P. 843, 72 A.L.R. 682; Rodman v. Munson, 13 Barb.(N.Y.) 63 and Id., 13 Barb.(N.Y.) 188.

"But the question has been passed on in many other states, and they refuse to follow the Idaho cases; some with the same sort of constitutional provisions, and others with provisions similar to those in Alabama. Department of Water & Power of Los Angeles v. Vroman, supra [218 Cal. 206, 22 P.(2d) 698]; Shelton v. Los Angeles, 206 Cal. 544, 275 P. 421; Shields v. Loveland, 74 Colo. 27, 218 P. 913; Winston v. Spokane, 12 Wash. 524, 41 P. 888; Barnes v. Lehi City, 74 Utah, 321, 279 P. 878; City of Bowling Green v. Kirby, 220 Ky. 839, 295 S.W. 1004; McClain v. Regents of University et al., 124 Or. 629, 265 P. 412; Briggs v. Greenville County, 137 S. C. 288, 135 S.E. 153; note, 72 A.L.R. 692.

"We prefer to step in line with the majority, and hold that such obligations do not make the bonds debts of the city as contemplated by section 225 or 222 of the Constitution.

"Our judgment is that the city of Florence may legally construct or otherwise acquire the proposed electric distribution system; that the proposed bonds, covenants, and agreements do not, and never will, impose a debt within the provision of section 225 of the Constitution."

■ In this case, the incorporation of the waterworks board was under the provisions of the act approved March 2, 1937, which act was drawn and passed pursuant to the foregoing decision. It is specifically declared that under the provisions of said act no city shall be liable for any debt created by such corporation, nor shall such debt be construed to be an indebtedness of such city. The provisions for the amortizing of the payments on the debt, out of proceeds of the sale and delivery of water from the springhead, watershed, or source thereof to the present water system of the municipality, by this new, necessary, and added adjunct or facility of the system, is not such liability or indebtedness, as are

the subjects of sections 222 and 225 of the Constitution.

We are of the opinion and hold that the proposed corporation, the issuance of its mortgage and evidences of debt, or the pledge of the income from the sale and delivery of water, as indicated, in no way offend any principle of organic law. Since the corporation is not one designated in section 222 of the Constitution, that section has no application.

The decision in the case of Oppenheim v. City of Florence, supra, does not apply. The conclusion now announced is in accord with the bridge decisions (Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695; Scott v. Alabama State Bridge Corp., 233 Ala. 12, 169 So. 273) and the decision in Randall v. State ex rel. City of Tuskegee, 233 Ala. 446, 172 So. 277.

The decree of the circuit court sustained the demurrers to the bill, and the judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and KNIGHT, JJ., concur.