299 So.2d 268

**The WATER WORKS BOARD OF the CITY OF LEEDS, a public corporation, et al.**

v.

**Charles O. HUFFSTUTLER et al.**

SC 545.

Supreme Court of Alabama.

Aug. 22, 1974.

Charles L. Kerr, Leeds, Bibb Allen, Birmingham, for appellants.

Johnson North Haskell & Slaughter, Birmingham, for appellees.

JONES, Justice.

This appeal is from a decree of the Circuit Court of Jefferson County declaring invalid two ordinances adopted by the governing body of the City of Leeds (the "City") and permanently enjoining the defendants below from acting pursuant to or in reliance upon these ordinances. The first of the ordinances in question purported to effect an amendment to the charter of The Water Works Board of the City of Leeds (the "Board"), and the second purported to mandate the transfer of the water system owned by the Board to a newly created Board of Water and Sewer Commissioners under conditions which would have resulted in the diversion of a fixed percentage of the gross revenues from such water system to the City. We affirm the judgment of the Circuit Court in the belief that the first ordinance represents an unlawful assertion of power over the Board by the City and that the second attempts to fix conditions for the transfer of the water system which unconstitutionally disregard the contractual rights of the Board's bondholders.

Suit was brought in this case by Charles O. Huffstutler, Kenneth Huddleston, Charles Abel and Albert O. Turner against the Board, the City and Paul S. Blair and James McCraney. Huffstutler, Huddleston and Abel sued in their capacities as the incumbent directors of the Board at the time suit was brought and as citizens and taxpayers of the City. Turner sued in his capacity as a citizen and taxpayer of the City. Appellant City was made a party to this suit because the plaintiffs below sought to have the ordinances of the City here in question declared illegal, void and of no effect. Appellant Board was made a party in order that the transfer of its water system pursuant to one of these ordinances could be enjoined pending a determination of the validity of such ordinance. Appellants Blair and McCraney were made parties in order that they might be enjoined from serving as directors of the Board pending a determination of the right of the City to increase the number of positions on the board of directors of the Board.

The Board is a public corporation organized under the provisions of Tit. 37, §§ 394–402, inclusive, Code of Alabama 1940 (Recomp.1958), (said sections being herein together referred to as the "Water Board Statute"). The Board was incorporated by a charter filed for record in the office of the Judge of Probate of Jefferson County on May 14, 1943, and that charter has not been since amended except to the extent that amendments thereto may have by operation of law resulted from acts of the Legislature of Alabama mandating changes in the powers or organizational structure of corporations organized under the Water Board Statute. The charter now lawfully provides that the corporate powers of the Board shall be exercised by a board of directors consisting of three directors.

At a meeting held on January 29, 1973, the governing body of the City adopted the two ordinances which were challenged in this litigation. The first ordinance, Ordinance No. 378, proclaimed that the governing body of the City desired to increase from three to five the number of directors of the Board and then ordained that the Board's charter was ipso facto amended to provide for such increase. No action prior to the adoption of Ordinance No. 378 had been taken by the board of directors of the Board proposing such an amendment to its charter, and no action has since been taken by said board of directors ratifying or approving the amendment purportedly effected by such ordinance. At the same meeting as that at which Ordinance No. 378

was adopted, the governing body of the City elected Appellants Blair and Mc-Craney to fill the two positions on the board of directors of the Board purportedly created by such amendment.

The second ordinance challenged in this litigation, Ordinance No. 379, authorized the incorporation of a Board of Water and Sewer Commissioners of the City of Leeds for the purpose of taking over the ownership and operation of both the Board's water system and the City's sanitary sewer system. The governing body of the City also sought by Ordinance No. 379 to prescribe the conditions upon which the transfer of the Board's water system was to be made to the Board of Water and Sewer Commissioners. As recognized in Ordinance No. 379, the transfer of the Board's water system could not take place unless agreed to by the Board [Tit. 37, § 402(33), Code of Alabama 1940 (Recomp.1958)], and from the record of this case, it is abundantly clear that the governing body of the City believed that the enlargement of the membership of the board of directors of the Board would make it possible to obtain the Board's agreement to the proposed transfer without having to wait two years, the period that would otherwise have to elapse in order for the governing body of the City to elect a majority of the three directors favorable to such transfer.

As a condition of the transfer of the Board's water system to the Board of Water and Sewer Commissioners, Ordinance No. 379 provided that the Board of Water and Sewer Commissioners should assume and perform all contractual obligations theretofore incurred by the Board in connection with its water system. Ordinance No. 379 further provided that the City was to be paid a fixed percentage of the gross revenues of the water system. The Board has outstanding two separate series of bonds which are secured by mortgages covering the water system and the revenues derived from it. To the extent that the payment to the City of a fixed percentage of the gross revenues of the water system

would constitute a charge on such revenues prior to the uses for which the whole of them had been pledged under the mortgages, Ordinance No. 379 threatened an infringement of the rights of the bondholders secured by the mortgages, notwithstanding the provisions in this ordinance for the assumption and performance by the Board of Water and Sewer Commissioners of all obligations incurred by the Board in connection with its water system.

After the adoption of these ordinances and the taking of steps by the City for their implementation, the appellees (plaintiffs below) brought suit against the appellants in order to determine the validity of Ordinance No. 378 and Ordinance No. 379, and pending that determination, to have Blair and McCraney enjoined from serving as directors of the Board and further to have the Board enjoined from transferring its water system to the newly created Board of Water and Sewer Commissioners pursuant to Ordinance No. 379. The preliminary injunctions requested by the appellees were granted and made permanent by the final decree of the Circuit Court. Without affecting the issues presented in this case, the governing body of the City subsequently amended and readopted both ordinances here in question, and it is with reference to the final versions of such ordinances adopted on March 20, 1973, that this case was decided by the Circuit Court.

Although making eighteen assignments of error, the appellants, both in their brief and in oral argument, argued only two assignments, which were that the Circuit Court erred in holding Ordinance No. 378 and Ordinance No. 379 to be illegal, void and of no effect. The only questions to be decided on this appeal are, therefore, whether the holdings of the Circuit Court with respect to these ordinances are correct.

The challenge to Ordinance No. 378 presents the question of whether the governing body of the City can, in violation of the Board's Charter, unilaterally increase the number of directors of the Board for the purpose of immediately gaining a ma-

jority of directors who will be responsive to the will of said governing body. The appellants contend that § 397 of the Water Board Statute gives the governing body of the City the right so to increase the number-of directors of the Board. The appellees contend that the Water Board Statute, considered as a whole, does not empower the governing body of the City to increase the number of directors in disregard of the Board's charter or to amend the charter to provide for such an increase without following the statutory procedure under which amendments to the charter are first proposed by the board of directors of the Board and then approved by the governing body of the City.

We believe that Judge William C. Barber, the trial Court Judge, has rendered an opinion in this case which comprehensively and correctly analyzes the authorities and principles of law that require us to affirm his decree holding Ordinance No. 378 invalid. The following portions of that opinion are adopted as our opinion in this case:

"The central issue in this case concerns the independence of public corporations such as the water works board here involved and their right to manage their affairs free of control by the governing bodies of the cities they serve, except for such control as may be lawfully exercised through the regular and periodic election of directors by such governing bodies. An understanding of the origins of such public corporations and the cases which have delimited and protected their separate status is necessary to a determination and resolution of this central issue.

" . . . .

"In order to make it possible for municipalities to finance utility systems without being blocked by the limitations contained in the Constitution of 1901 (particularly Sections 222 and 225 relating to the creation of debt by municipalities), a number of statutes permitting municipalities to issue revenue bonds were enacted in the early 1930's, varying in detail, but in general making such bonds payable out of the revenues of the utility to be constructed, expanded or improved with the proceeds of such bonds. The opinions of the Justices of the Supreme Court of Alabama on the constitutionality of such statutes were sought in several instances, e. g., Opinion of the Justices, 226 Ala. 18, 145 So. 481 (1933) (considering the Goodwyn Act, Act No. 265 adopted at the 1932 Extraordinary Session of the Legislature of Alabama (hereinafter called 'the Legislature') ), Opinion of the Justices, 226 Ala. 570, 148 So. 111 (1933) (considering the Kelley Act, Act No. 102 adopted at the 1933 Extraordinary Session of the Legislature), Opinion of the Justices, 228 Ala. 140, 152 So. 901 (1934) (considering the Carmichael Act, Act No. 107 adopted at the 1933 Extraordinary Session of the Legislature); and several leading test cases concerning such statutes were decided by the Supreme Court, Bankhead v. Town of Sulligent, 229 Ala. 45, 155 So. 869 (1934), Oppenheim v. City of Florence, 229 Ala. 50, 155 So. 859 (1934), Smith v. Town of Guin, 229 Ala. 61, 155 So. 865 (1934).

"A considerable body of law developed from the State's experimentation with the power of a municipality to issue its revenue bonds and to use the proceeds thereof to construct or improve a utility which it owned. Although such body of law did in a great number of instances permit desired financing arrangements, the issuance of revenue bonds by a municipality itself was, nevertheless, circumscribed by a fairly elaborate set of rules which could not always accommodate reasonable projects. See Town of Opp v. Donaldson, 230 Ala. 689, 163 So. 332 (1935).

"The ultimate solution to the complexity of financing municipal utility systems was achieved by legislation permitting the establishment of independent public corporations to own and operate the utility systems for the municipalities to be served by such system. Such public corporations derived their immense usefulness in this re-

spect from their legal status as special political entities created by the Legislature which, so long as they maintained their corporate separation from the municipalities they served, were not subject to the constitutional limitations on such municipalities.

"The Water Board Statute under which respondent The Water Works Board of the City of Leeds was organized (Act No. 228 adopted at the 1936–1937 Extraordinary Session of the Legislature and codified as Sections 394–402, inclusive, of Title 37 of the Code of Alabama of 1940) was the first general law enacted by the Legislature to permit the financing of municipal utilities by a public corporation separate and independent from the municipality to be served by such utilities. In its initial form the Water Board Statute limited corporations organized thereunder to the financing and operation of water systems and sanitary sewer systems, but as the usefulness of such corporations was proved by experience, powers with respect to gas systems were added (Act No. 154 adopted at the 1947 Regular Session of the Legislature (unofficially codified as Section 402(2)–402(14), inclusive, of the 1958 Recompilation of the Code of Alabama of 1940)). The value of the State's experience with the Water Board Statute has been further confirmed by the subsequent enactment of similar statutes which, although varying in both scope and detail from the Water Board Statute, faithfully follow its concept. (See Act No. 775 adopted at the 1951 Regular Session of the Legislature (unofficially codified as Sections 402(28)–402(46), inclusive, of Title 37 of the 1958 Recompilation of the Code of Alabama of 1940) and Act No. 175 adopted at the 1951 Regular Session of the Legislature (unofficially codified as Sections 402(15)–402(27), inclusive, of Title 37 of the 1958 Recompilation of the Code of Alabama of 1940), said Acts No. 775 and 175 and sections thereof being hereinafter cited as sections in the 1958 Recompiled Code.)

"In a number of cases considering the status of boards organized under the Water Board Statute, the Supreme Court has emphasized the corporate independence of such boards, distinct and apart from the cities they serve, and has thereby preserved their usefulness in financing utility systems. The first case decided by the Supreme Court of Alabama involving a water board organized under the Water Board Statute was Smith v. Water Works Board of the City of Cullman, 234 Ala. 418, 175 So. 380 (1937). The Court held that a proposed revenue bond issue by the water board in that case did not violate Sections 222 and 225 of the Constitution because the water board was a public corporation to which such constitutional provisions did not apply. Although the bonds considered in the *Smith* case were revenue bonds of a character that would not at any rate have constituted debt within the meaning of Sections 222 and 225, the Court did not rely on this point but based its decision on the independent corporate status of the water board. To the same effect is the Court's decision in Water Works Board of the City of Mobile v. City of Mobile, 253 Ala. 158, 43 So.2d 409 (1949).

"In Atkinson v. City of Gadsden, 238 Ala. 556, 192 So. 510 (1939), the Supreme Court considered the argument that the transfer of the water system of the City of Gadsden to a water board in conjunction with a bond issue to finance improvements to said system amounted to the granting of a franchise to the water board which was in excess of thirty years and therefore in violation of Section 228 of the Constitution. In accordance with the doctrine that water boards are independent corporations which do not derive their powers from the cities they serve, the Supreme Court held that the grant of the franchise to operate a water system was from the Legislature in the exercise of its sovereign power and not from the city.

"In the case of Jackson v. Hubbard, 256 Ala. 114, 53 So.2d 723 (1951), the Supreme Court considered the effect on a water board of a change in the form of the gov-

erning body of a city from that of a mayor and council to a city commission. Prior to the change in the form of city government, the mayor and council had at the appropriate time elected directors of the water board for staggered terms of six years. The new city commissioners attempted to remove the incumbent directors of the water board and to appoint new directors on the theory that the terms of office of the incumbent directors had been terminated by the change in the form of city government. The city commissioners relied principally on the statutes governing a change to a commission form of government, among which was Section 45 of Title 37 which provides in pertinent part as follows:

" 'The commissioners of such city, to be known as the board of commissioners of such city, shall have, possess and exercise all the powers and authority, legislative, executive, and judicial, possessed and exercised by the mayor and board of aldermen and board of police commissioners, and any and all other boards (except boards of education), commissions and officers of said city of any and every sort whatsoever; *and all such boards, commissions and officers (except those provided for by this article) shall then and thereby be abolished and the terms of office of any and all such officers or officials shall then and thereby cease, except boards of education.'* [Emphasis supplied.]

To the same effect is Section 96 of Title 37. Despite the clear statutory language of Sections 45 and 96, the Supreme Court held that it was the intent of the legislature in the subsequent enactment of the Water Board Statute to provide for the independence of such boards and the survival in office of the incumbent directors thereof when a change in the form of city government occurred.

" 'We agree with counsel for appellants, respondents below, that the supplying of water to a city and its inhabitants is a municipal function and that the Water Works Board of the City of Auburn is in that sense an agency of the City. But we cannot agree that it was the legislative intent that the board of directors of a water works board be construed as that character of board which is abolished upon the adoption of a commission form of government.' 256 Ala. at 120, [53 So.2d 723.]

"The case of City of Mobile v. Cochran, 276 Ala. 530, 165 So.2d 81 (1964), considered the question of whether an officer of the Board of Water and Sewer Commissioners of the City of Mobile was an employee or officer of the city itself within the meaning of the anti-conflict-of-interest statutes which prohibit the city from dealing with its own officers and employees (Sections 77, 108 and 414 of Title 37). Cochran was an agent for a fire insurance company, and while he was serving as an officer of the Board of Water and Sewer Commissioners, his company submitted a winning bid for fire insurance to cover a project owned by the city. Cochran would share in the premium paid for such insurance. The city declined to pay the premium because it was afraid that Cochran's status an an officer of the Board of Water and Sewer Commissioners made it illegal for the city to have any business dealings with him or his company. Because of its interest in having the legal question decided, the Water Works Board of the City of Mobile, a board organized (like the Leeds Board) under the Water Board Statute, intervened in the case.

"The Court held that Cochran was an officer of a corporation separate and distinct from the City of Mobile and that the payment of the premium to his company was not barred by the conflict of interest statutes applicable to municipalities.

" 'Being distinct and separate corporations, the relationship of appellee Cochran as an officer of the Board does not neccessarily clothe him with any official duties in connection with the City of

Mobile, nor is he necessarily cast as an employee of said municipality by virtue of his official connections with said Board.

"'Although there may be some relationship in ultimate objectives of the two, and some kindred authority to engage in activities of a proprietary or governmental character for the benefit of the inhabitants of the City of Mobile, and in such respect the Board is an agency or arm of the City of Mobile, nevertheless, the two corporations are distinct, separate and independent corporations, each charged with respective separate and distinct duties and authority under the law. The legislature had defined and limited the functions of each corporation, and provided for its officers and prescribed their duties. There are no provisions for common or mutual control, nor do the same overlap. Each set of officers control in their own right with no cross-currents of authority.' 276 Ala. at 531, 532, [165 So.2d 81.]

"With respect to corporations organized under the Water Board Statute, the Court further said that:

"'What we have said above with reference to the distinctions and authority of the City of Mobile and the Board of Water and Sewer Commissioners apply with equal force to appellant, City of Mobile, and appellee, Water Works Board; and also to the·authority and respective duties of the officers of each corporation. 276 Ala. at 532, [165 So.2d 81]'

"In a recent opinion dealing with boards organized under the Water Board Statute, the Supreme Court upheld the right of a water board to sell real estate to a private concern on credit. Coxe v. Water Works Board of the City of Birmingham, 288 Ala. 332, 261 So.2d 12 (1972). The argument made against the right of the Board to sell its property on credit was that such a transaction would violate Section 94 of the Constitution which provides that the legis-

lature shall not have the power to authorize any county, city, town or other subdivision of this state to lend its credit or to grant public money or things of value in aid of, or to any individual, association or corporation. The Court concluded that the board was an independent entity and not a subdivision of either the City of Birmingham or the State of Alabama and, therefore, did not come within the limitations of Section 94.

■ "The cases considered establish that it is the law of this State that a public corporation organized under the Water Board Statute, such as the Board in this case, is an entity separate and independent from the city which it serves and that the city can lawfully exercise only such power over such corporations as is conferred on the city by the charter of such corporation and the general laws of the State under which it is organized. If such corporation functioned as a mere arm or agency of the city, subject to.the legislative power of the city, it could not, without making a mockery of the Constitution of this State, perform its intended function of financing and operating municipal utility systems.

"Relying on the language in one section of the Water Board Statute (Section 397 of Title 37, as amended) that 'the governing body of any municipality which has heretofore or hereafter authorized the creation of a corporation as provided herein may, at its option, increase the board of directors from three to five members . . . ,' the respondents argue that the governing body of the City has an absolute right to increase the number of directors of the Board without the necessity of first having a conflicting provision of the Board's Charter amended through use of the general amendatory procedure provided in the Water Board Statute. In effect, this argument asserts that, with respect to increasing the number of directors, the Legislature has created a special right in the City which must be recognized despite its inconsistency with the remainder of the Water Board Statute. The special right

can be used to seize control of a water board organized under that Statute in violation of its corporate charter. To sustain this argument, the respondents must show that the Legislature intended to depart radically from the general structure of statutory and case law which has heretofore preserved the corporate integrity of water boards organized under the Water Board Statute.

■ "With respect to the quesion of legislative intent, the Court does not believe that logic favors the respondents' argument. In reaching its conclusion in Jackson v. Hubbard, supra, that the terms of office of the directors of a water board were not terminated by a change in the form of city government, the Supreme Court made the following observation about the staggered six-year terms for which water board directors are elected:

" 'The change made by the legislature in 1943, providing for staggered terms, seems to us to indicate a clear legislative intent to make free from any doubt the permanency and independence of the status of the members of the board of directors.' 256 Ala. at 120, [53 So.2d 723.]

The effect of such staggered six-year terms is to impose upon any incoming city governing body a wait of at least two years before it will have an opportunity to elect a majority of the directors of the water board. It was obviously the policy of the Legislature to protect such boards, which have responsibilities both to bondholders and to users of their water systems, from the political shifts and machinations which often take place on the heels of a change in city government. The same is true if the number of directors has been increased to five, because the statute provides that the two additional directors shall also be elected for staggered six-year terms (Section 397 of Title 37, as amended).

"The present governing body of the City of Leeds, which took office in October, 1972, claims the special right to increase the number of directors in violation of the Board's Charter as a means of gaining immediate control of the Board. But what would be the City's position if the Board, with the consent of a prior governing body, had earlier amended the Charter to provide for five directors and all five positions were now filled? The City's governing body would then have no choice but to wait until, in the due course of exercising its right to elect directors, it achieved the change in the Board's directors which it desired.

■ "In this perspective, the unilateral right claimed by the City's governing body to add two directors to the Board would reduce the statutory provision upon which this claim is based to nothing more than a one-shot opportunity for a city governing body to seize control of the water board. Once this one-shot opportunity has been exhausted, relations between the city and the water board would again be governed by the regular provisions of the Water Board Statute without possibility of further upset. The respondents' position gives a demeaning . . . interpretation to the intention of the Legislature in enacting the statutory provision which allows for an increase in the number of directors.

"When viewed in the context of the Water Board Statute as a whole, the purpose of such provision is obviously to allow an increase in the number of directors if the directors of the water board and the governing body of the city agree that more effective representation of the community interest will result from such an increase. Such an increase can then be authorized by a charter amendment made in accordance with the amendatory procedure provided in the Water Board Statute.

"If it had been the intention of the Legislature to dispense with the policy of safeguarding the independence of water boards . . . ., it could have adopted a law making the directors of a water board serve at the pleasure of the city governing

body. Surely it would not have adopted a one-shot takeover scheme, as contended by the respondents, which could not even have been used by succeeding governing bodies of the city.

■ "It is a well known rule of statutory construction that the word 'may' when used in a statute conferring power on a public official or agency can properly be construed as mandatory when the rights of the public are involved, Fuller v. State, 31 Ala.App. 324, 16 So.2d 428 (1944). The Court is of the opinion that the phrase, 'at its option,' following the word 'may' in the sentence of Section 397 of Title 37 allowing an increase in the number of directors was intended to negate any implication that that statutory provision created a mandatory obligation on the part of the city and the water board to increase the number of directors to five. It was language intended to reinforce the permissive nature of the provision allowing such increase and should not be interpreted as conferring a special right on any city to override the charter of its water board in an effort to gain control thereof.

"The Court believes that its denial of the special right claimed be respondent City of Leeds to increase the number of directors of the Board is mandated by the case of Buffalow v. State ex rel. Inabinett, 281 Ala. 132, 199 So.2d 672 (1967), which is the principal authority concerning the effect of a water board charter and the procedure which must be followed for its lawful amendment. Before considering the facts of the case, it is important to understand the rather complicated legal framework in which it arose.

"Apparently believing that the cities of the State needed a new form of public corporation with greater powers than those organized under the Water Board Statute, the Legislature enacted Act No. 175 referred to . . . [earlier in this opinion]. In addition to providing for the incorporation of new boards with the power to finance, acquire and operate water, sewer, gas and electric systems, said Act No. 175 also included a provision (Section 402(27)) that water boards already incorporated under the Water Board Statute (Sections 394–402) could amend their charters so as to come under and be governed by all of the provisions of said Act No. 175. The Buffalow case involved the Water Works and Sewer Board of the City of Florala, which was a board originally incorporated in 1949 under the provisions of the Water Board Statute and which, after the enactment of said Act No. 175, amended its charter to come under that Act.

"At its 1956 Second Special Session, the Legislature enacted two companion acts, Act No. 113 and Act No. 116, which amended respectively Section 397 of the Water Board Statute and Section 402(17) of said Act No. 175. Briefly summarized, both of these acts provided with respect to any public corporation to which they were separately applicable (1) that any officer of the municipality connected with such corporation was, contrary to prior law, now eligible for election as a director of such corporation, and (2) that the governing body of such municipality might increase the number of directors of such corporation from three to five. Section 402(17) was further amended (only Section 402(17) was amended—the parallel provision of the Water Board Statute, Section 397, was not changed) in 1957 to provide that any officer of the municipality appointed to serve as a director should serve for the term for which he was appointed or during his tenure as a municipal officer, whichever expired first.

"Inabinett, as plaintiff in the Buffalow case, brought an action of quo warranto against Buffalow charging him with unlawfully holding the office of director of the Water Works and Sewer Board of the City of Florala. Plaintiff Inabinett had been appointed to said Water Works and Sewer Board during his term as a member of the City Council of the City of Florala. His term of office as a member of the City Council ended in October, 1964. He

continued to attend and participate in meetings of the directors of said Water Works and Sewer Board until he was advised on January 28, 1964, that Buffalow had been appointed as a director of said Board to fill the unexpired portion of the term for which Inabinett had been originally appointed, but which, pursuant to the 1957 amendment referred to above, had been cut off by the ending of his term as a city councilman. Although, as previously mentioned, the charter of the Water Works and Sewer Board of the City of Florala had been amended to bring said Board under the provisions of said Act No. 175, that charter had not been further amended to remove the restriction against officers of the City serving as directors of said Board.

"The holding of the lower court was as follows:

" 'It is the opinion of the Court that the general statutes of the State permitting members of the City governing bodys [sic] to serve as Directors of such Water Works and Sewer Boards is permissive only and is not directive or mandatory that they must serve on such boards, and the articles of incorporation of this particular board not having been amended to permit such serving by the members of the governing body, it is the opinion of the Court that the relator during his term as a member of the City Council of the City of Florala, and the respondent during his term as Mayor of the City of Florala have each been only de facto directors of said board and should be excluded therefrom.' 281 Ala. at 133, [199 So.2d 672.]

"The Supreme Court stated that it was in full agreement with the conclusion reached by the trial court and adopted the conclusions of that court as the basis of its own opinion. In support of its decision, it made the following instructive comments:

" 'A careful reading of the statutes involved will clearly indicate that the legislature carefully avoided any implication that the new statutes [Act No. 175 and the 1956 amendments to Section 397 and Section 402(17)] adopted from time to time were mandatory on the municipalities involved. The new statutes defined the outside limits of the authority of the corporations formed under their provisions. It never indicated that the corporation was required to exercise all of the authority which the legislature permitted it to exercise. [The Water Works Board of] [t]he City of Florala was not required to amend its charter so as to come under the 1955 amendments [Act No. 175 adopted in 1951—there were no applicable amendments in 1955]. It was permitted to if it chose. It chose to do so. Further, it was not required to amend its charter to remove the restriction against municipal officers serving on the board of directors of its water works board. It was permitted to if it chose under the 1956 amendment. It did not see fit to remove this restriction and it remains in its articles of incorporation. There is nothing to indicate that the legislature attempted to require that the restriction be removed where it appeared in certificates of incorporation already on file, but rather simply allowed the removal of the prohibition if the board found it desirable.' 281 Ala. at 134, [199 So.2d 672.] [Explanatory material in brackets added.]

"While the excerpt from the opinion refers to the City of Florala at the beginning of the fourth sentence in the above quotation, it is obvious from the context that what is meant is the Water Works and Sewer Board of the City of Florala, because otherwise the use of the pronoun 'it' throughout the quotation thereafter would not make sense. Only said Board, and not the City itself, had a charter or articles of incorporation which was the subject of the whole discussion.

■ "The *Buffalow* opinion is not clear as to the statute under which the Florala

Water Board should have proceeded in order to remove the troublesome restrictions from its charter—whether it should have been Section 395, as amended, which arguably applied to said board because it was organized under the Water Board Statute or Section 402(16) added by said Act No. 175, which arguably applied because said board had earlier amended its charter to come under said Act No. 175. The holding of the Court would not be changed by the answer to this question, however, because both statutory provisions prescribed identical amendatory procedures, and having been adopted at the same time, both should be presumed to reflect the same legislative intent.

 "Because of the parallel way in which the Court compared the charter amendment made to come under said Act No. 175 with the charter amendment which would have been necessary for the board to make the changes allowed by the 1956 acts, there can be no doubt that such changes, whether they involve the eligibility of municipal officials to serve as directors or an increase in the number of directors, can only be made pursuant to the amendatory procedures of Section 395 or Section 402(16). Where the procedure prescribed in Section 395 of the Water Board Statute for amending the charter of a water board is functionally the same as the procedure prescribed in Section 394 of that Statute for creating the charter of such board, and where no other amendatory procedure is prescribed in said Statute, it is necessary and logical that the amendatory procedure of Section 395 be construed broadly, as the Supreme Court did in the *Buffalow* case, supra, to enable said Statute to be coherently applied to the whole gamut of problems pertaining to the creation and regulation of boards organized thereunder.

 "The governing body of respondent City of Leeds has ignored the amendatory procedure provided by Section 395 on the grounds that this section does not apply to an increase in the number of directors of the Board. Under what law does said governing body then claim the power to amend the Board's Charter? It has only such powers over the Board as are given it by the Water Board Statute and the Board's Charter, and the amendatory procedure provided in that statute confers on the City only the power to approve or disapprove amendments initiated by the directors of the Board. In the absence of any applicable statutory provisions dealing with the amendment of the Board's Charter, the respondents simply argue that the governing body of the City has the right to declare the Charter amended, and pursuant to such declaration, put into effect the desired change. They further argue that that is the only kind of amendment required by the Supreme Court's holding in *Buffalow*. Such an argument exalts the most trivial kind of form into substance, because it reduces the *Buffalow* holding to nothing more than requiring the City, as a prerequisite to exercising its power over the Board's Charter, to go through the meaningless act of first declaring in a phrase of art using the word 'amend' that it intends to exercise its power.

"Unless one is prepared to say that the Supreme Court based its *Buffalow* decision on that gossamer matter of form, the only way the respondents can avoid the required amendment of the Board's Charter is to argue as the appellant in *Buffalow* did in his brief on rehearing by the Supreme Court. He argued that the city had the right to implement the provisions of the 1956 amendments to Section 402(17) and Section 397 because those amendments represented a mandatory amendment to the charters of public corporations to which they were respectively applicable. In his view, the Legislature had amended such corporations' charters and the City of Florala was thus entitled to avail itself of the option thereby incorporated in the water board's charter by the 1956 amendments. But the Supreme Court in its *Buffalow* opinion rejected this argument in a clear holding that the 1956 amendments were permissive and did not constitute a

mandatory amendment of the board's charter. The effect of such a holding is to leave no way for said 1956 amendments to be implemented except by an amendment to the Board's Charter in conformity with a statutory procedure, and the only such procedure in the Water Board Statute is Section 395 which the respondents have failed to follow."

 We also affirm the decree of the Circuit Court holding Ordinance No. 379 invalid on the grounds that the express conditions thereof do not conform to the requirements of Tit. 37, § 402(33), Code of Alabama 1940 (Recomp. 1958), and that this ordinance will, if implemented in accordance with its terms under readily foreseeable circumstances, constitute an unconstitutional infringement of the contractual rights of the present bondholders of the Board. We desire, however, that this holding be viewed in the light of the particular defects of Ordinance No. 379 and not be misinterpreted to limit the proper and lawful rights of cities and water boards under § 402(33) to transfer water and sewer systems to boards of water and sewer commissioners organized under Tit. 37, §§ 402(28)–402(46), inclusive, Code of Alabama 1940 (Recomp. 1958).

Ordinance No. 379 attempts to comply with § 402(33) by using the exact language thereof to describe the obligations of the Board which are to be assumed by the newly organized Board of Water and Sewer Commissioners of the City of Leeds. It fails, however, to comply with § 402(33) because of its specific provisions which require that a fixed percentage of the gross revenues of the Board's water system be paid to the City as a first charge or lien on such revenues. The gross revenues of the water system have been pledged for other purposes under the mortgages securing the bondholders of the Board, and there can be diverted to the City under the arrangement contemplated by Ordinance No. 379 only the surplus revenues remaining after all requirements of these mortgages have been met.

Finding no error in the Circuit Court's judgment and decree disposing of the issues here presented, we affirm.

Affirmed.

HARWOOD, BLOODWORTH and McCALL, JJ., concur.

COLEMAN, J., concurs in the result.